Cecil J. CHRISTIAN, Appellant,

v.

HIRSCHBACH MOTOR LINES, INC., and Aetna Casualty and Surety Company, Appellees.

No. 92–330.

Court of Appeals of Iowa.

Dec. 29, 1992.

James F. Fenlon of Whitmore & Fenlon, P.C., Omaha, NE, and E.J. Kelly of Hopkins & Huebner, Des Moines, for appellant.

Thomas M. Plaza and Judith Ann Higgs of Eidsmoe, Heidman, Redmond, Fredregill, Patterson & Schatz, Sioux City, for appellees.

Heard by DONIELSON, P.J., HABHAB, J., and KEEFE, Senior Judge.*

HABHAB, Judge.

On October 26, 1987, appellant, Cecil J. Christian, filed a petition with the Iowa Industrial Commissioner seeking benefits from Hirschbach Motor Lines, Inc. and Liberty Mutual Insurance Company for an injury arising out of and in the course of his employment on November 10, 1985. That petition was subsequently amended to add Aetna Casualty & Surety Company as insurance carrier for Hirschbach.

Christian's claim was heard by a Deputy Industrial Commissioner who concluded the Iowa Industrial Commissioner lacked subject matter jurisdiction over the claim. Christian appealed. Following a de novo review, the Industrial Commissioner issued an appeal decision in which he affirmed and adopted the decision of the deputy.

Christian then sought judicial review in the district court. The district court judge concluded the decision made by the Industrial Commissioner was supported by substantial evidence and should be affirmed. Christian appeals. We affirm.

FACTS

Hirschbach Motor Lines is an Iowa corporation engaged as an irregular route commodity contract carrier by motor vehicle. Its general offices and administration are located in South Sioux City, Nebraska where corporate, payroll, and dispatching functions are handled. It also owns a terminal in Sioux City, Iowa where the maintenance and safety departments are located.

Cecil Christian, an Arkansas resident, and other members of his family have a long standing relationship with Hirschbach. Christian's relationship started in 1980 when he became a second driver for his cousin. In November 1983, Christian became a first driver and drove tractors for his uncle and his father. He was paid by family members.

Prior to entering into a written agreement, denoted as a contractor/operating agreement, with Hirschbach on April 28, 1984, which he signed and mailed from Missouri, his state of residence at that time, Christian had three contacts with employees of Hirschbach. The events that led up to those contacts are as follows.

In 1984, Christian's father gifted him a tractor which Christian intended to trade for another tractor. Christian called Bob Hodges, Hirschbach's safety head, in Hirschbach's Iowa office to determine if the vehicle he intended to purchase met Hirschbach's specifications. Through this telephone conversation, Hodges indicated the tractor Christian intended to purchase generally met Hirschbach's specifications and requirements. Christian claims at that time Hodges stated he would put him on.

After purchasing the tractor, Christian called Peggy Smith in the Iowa office who then sent him the permits necessary to bring the tractor to Iowa for inspection. At Peggy Smith's request, Christian pulled an empty trailer for Hirschbach from Missouri to Sioux City. Upon his arrival in Sioux City, his tractor, after a five-minute

* Senior Judge from the 1st Judicial District serving on this court by order of the Iowa Supreme Court.

inspection by Chris Love of the Hirschbach safety office in Sioux City, was approved. Christian then began driving for Hirschbach.

Approximately two weeks later, Christian received a written contractor/operating agreement in Missouri, the site of his family's trucking terminal. On April 28, 1984, Christian signed the thirteen-page agreement in Missouri and mailed it from Missouri back to Hirschbach. The contract specified the agreement would be effective at 10:00 a.m. on that date. It further specified the agreement would be governed by the laws of the State of Nebraska, both as to interpretation and performance. This agreement represented Christian's status was that of an independent contractor and that he was responsible for obtaining his own workers' compensation coverage for his drivers, presumably including himself if he elected to drive the leased tractor.

In November 1985, Christian was injured in a motor vehicle accident several miles south of Clinton, Arkansas. The contractor/operating agreement of April 28, 1984 was in effect at the time of the injury. Christian received workers' compensation benefits from his insurance carrier.

In October 1987, Christian filed an original notice and petition with the Iowa Industrial Commissioner against Hirschbach alleging he sustained a work-related injury. As previously noted, the Deputy Industrial Commissioner found the Industrial Commissioner lacked subject matter jurisdiction pursuant to Iowa Code section 85.71 (1989). The deputy determined the relationship between the parties was defined by the contractor/operating agreement which was in force at the time of the injury.[1] The deputy found Christian and Hirschbach entered into a contract in the State of Missouri on April 28, 1984, when Christian signed and mailed the agreement. Thus, the deputy concluded Christian was not working under a contractor of hire made in the State of Iowa and the agency lacked subject matter jurisdiction to consider his claim. On appeal, the Industrial Commissioner affirmed and adopted the deputy's proposed decision as the final agency action in this case. On judicial review, the district court concluded substantial evidence supported the Industrial Commissioner's decision.

## SCOPE OF REVIEW

 The scope of review in cases arising out of the Iowa Administrative Procedure Act is limited to the corrections of errors at law. *Foods, Inc. v. Iowa Civil Rights Comm'n*, 318 N.W.2d 162, 165 (Iowa 1982). A district court decision rendered in an appellate capacity is reviewed to determine whether the district court correctly applied the law. *Id.* To make that determination this court applies the standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as the district court's. *Jackson County Pub. Hosp. v. Public Employment Relations Bd.*, 280 N.W.2d 426, 429–30 (Iowa 1979). The scope of review encompasses a review of the entire record and is not limited to the agency's findings. *Higgins v. Iowa Dep't of Job Serv.*, 350 N.W.2d 187, 191 (Iowa 1984).

 Iowa Code section 17A.19(8)(f) provides in a contested case the court shall grant relief from an agency decision which is unsupported by substantial evidence made before the agency when that record is viewed as a whole. *Eaton v. Iowa Dep't of Job Serv.*, 376 N.W.2d 915, 916–17 (Iowa App.1985). Evidence is substantial to support an agency's decision when a reasonable person would find it adequate to reach a conclusion. *Id.* at 917. The question is not whether the evidence might support a different finding but whether the evidence supports the findings actually made. *Henry v. Iowa Dep't of Job Serv.*, 391 N.W.2d 731, 734 (Iowa App.1986). The fact that two inconsistent conclusions can be drawn from the evidence does not mean that one of those conclusions is unsupported by substantial evidence. *Id.*

 We must evaluate the decision of the Industrial Commissioner with an eye to

---

1. The deputy assumed for purposes of determining subject matter jurisdiction that there was an employment relationship created by the parties. We indulge in the same assumption.

upholding that decision rather than defeating it. To that end, the findings made by the Commissioner are to be given a broad, liberal construction with the court being bound by those findings unless a different result is required as a matter of law. *Ward v. Iowa Dep't of Transp.*, 304 N.W.2d 236, 238 (Iowa 1981).

## ANALYSIS

■ Christian was injured in Arkansas. Because his injury occurred outside the territorial limits of the State of Iowa, the Industrial Commissioner can take jurisdiction of this matter only if one of the subsections of Iowa Code section 85.71 is applicable.

Iowa Code section 85.71 provides in pertinent part:

If an employee, while working outside the territorial limits of this state, suffers an injury on account of which the employee ... would have been entitled to the benefits provided by this chapter had such injury occurred within this state, such employee ... shall be entitled to the benefits provided by this chapter, provided that at the time of such injury:

1. The employment is principally localized in this state, that is, the employee's employer has a place of business in this or some other state and the employee regularly works in this state, or if the employee is domiciled in this state, or

2. The employee is working under a contract of hire made in this state in employment not principally localized in any state, or

3. The employee is working under a contract of hire made in this state in employment principally localized in another state, whose workers' compensation law is not applicable to the employee's employer, or

4. The employee is working under a contract of hire made in this state for employment outside the United States.

Iowa Code § 85.71 (1989).

The Deputy Industrial Commissioner considered and eliminated subsection (1) because the claimant was not domiciled in Iowa and he failed to establish that his relationship, whether it be employment or otherwise, was principally located in Iowa. After concluding the parties entered into the contractor/operating agreement in Missouri, the Deputy Industrial Commissioner determined subsections (2) and (3) did not apply because Christian was not working under a contract of hire made in Iowa. The Deputy Industrial Commissioner eliminated subsection (4) because Christian was not working outside the United States. Ultimately, the Deputy Industrial Commissioner determined the Industrial Commissioner lacked subject matter jurisdiction because none of the subsections of Iowa Code section 85.71 were applicable to the facts in the case at bar. The Industrial Commissioner affirmed, as did the district court.

We agree with the district court and find the Industrial Commissioner's decision is supported by substantial evidence. As the district court properly pointed out, the petitioner-appellant's telephone conversation with Bob Hodges was not one which was complete as to the terms so that the only thing remaining to be done was to reduce the agreement to writing. That discussion dealt with the purchase of a new truck. Following that phone call, petitioner-appellant received a letter setting out what equipment would be acceptable to Hirschbach. The conversation with Hodges, when we consider its full content, was exploratory in nature and amounted to what we characterize as a "what if" discussion. There was no testimony regarding a discussion of any of the subject areas.

The contractor-operating agreement subsequently signed by the petitioner-appellant is a thirteen-page document with six pages of addenda. It contains thirty-eight individual paragraphs with thirty sub and sub-subparagraphs dealing with such things as the hiring of employees, purchase of insurance, compensation, payment of fines, termination, and other matters. It cannot be said that during the conversation with Hodges or with Peggy Smith there was a meeting of the minds as claimed by the appellant. Nor can it be said that the final act necessary to form a binding contract took place during the petitioner's con-

versations with Hodges and/or Smith. *See George H. Wentz, Inc. v. Sabasta*, 337 N.W.2d 495 (Iowa 1983).

As an aside, we note the purpose of Iowa Code section 85.71 is to identify those employees who are entitled to benefits under the Act despite occurrence of an injury out of state. As our supreme court stated, in *Wentz*, 337 N.W.2d at 500:

> [I]f the circumstances of an employee's out-of-state injury fall outside each of the four subsections of section 85.71, no Iowa recovery will be permitted. *See id.* [*Iowa Beef Processors, Inc. v. Miller*, 312 N.W.2d 530] at 533–34 [ (Iowa 1981) ]; *Hubbs v. Sandia Corp.*, 98 N.M. 389, 392–93, 648 P.2d 1202, 1205–06 (Ct. App.), *cert. denied*, 98 N.M. 478, 649 P.2d 1391 (1982). Iowa Code section 85.71 is based on language found in section 7 of the model Workmen's Compensation and Rehabilitation Law drafted by the Council of State Governments. *Iowa Beef Processors, Inc.*, 312 N.W.2d at 532; H. Dahl, *The Iowa Workmen's Compensation Law and Federal Recommendations*, 24 Drake L.Rev. 336, 352 (1975); *see Council of State Governments Model Act, Comprehensive Workmen's Compensation and Rehabilitation Law* § 7 (1963). The primary focus under the model act, and Iowa Code section 85.71, is on the jurisdiction where the employee's employment is "principally localized." *See* Iowa Code section 85.71(1); *Council of State Governments Model Act* at § 7(1). The place of contract or hiring becomes significant only when the employment is not principally localized in any state, the law of the state where the employment is principally localized is not applicable to the employer, or the employment is outside the United States. *See* Iowa Code section 85.71(1); *Council of State Governments Model Act* at § 7(1). . . .

We conclude the Iowa Industrial Commissioner lacks subject matter jurisdiction. After considering all issues presented, we affirm the district court.

Costs of this appeal are taxed to the appellant.

AFFIRMED.

SCHLEGEL, J., takes no part.