HEARTLAND EXPRESS, INC.,
Petitioner–Appellant,

v.

George T. TERRY, Respondent–
Appellee.

George T. Terry, Petitioner–Appellant,

v.

Heartland Express, Inc., Respondent–
Appellee.

No. 99–1477.

Supreme Court of Iowa.

July 5, 2001.

Joseph M. Barron and Stephen W. Spencer of Peddicord, Wharton, Thune & Spencer, Des Moines, for Heartland Express, Inc.

Paul J. McAndrew, Iowa City, for George T. Terry.

LAVORATO, Chief Justice.

The decisive issue in this workers' compensation proceeding is whether the Industrial Commissioner had subject matter jurisdiction over the claimant's claim for workers' compensation benefits and his claim for alternate medical care. Because we conclude such jurisdiction was lacking, we affirm a district court ruling reversing the commissioner's award of benefits. We vacate another district court ruling affirming the commissioner's award of alternate medical care.

## I. Facts.

On February 2, 1994, George T. Terry, a Georgia resident, saw a newspaper advertisement in the *Atlanta Journal–Constitution* for employment as a truck driver with Heartland Express, Inc., an Iowa company headquartered in Coralville, Iowa. In responding to the advertisement, Terry called the Heartland terminal in Forest Park, Georgia. Later, Terry filled out an application at this terminal and turned it into an employee at the terminal, who told Terry that he would forward the application to Coralville for approval. As instructed, Terry called this employee two days later and was told he was hired.

As a truck driver for Heartland, Terry covered a number of states, including Iowa. He picked up and dropped loads in Iowa three to four times per month. Some months, Terry did not come into Iowa at all. Terry took dispatch orders out of Coralville three to seven times per week, sent completed logs to Iowa, and received his pay from Iowa.

On October 4, 1995, Terry was driving for Heartland in Louisiana. When he tried to lock the double doors of his semi-trailer in hurricane winds, the right door came loose, striking him in the forehead. The blow knocked him unconscious. Later, with some difficulty stemming from dizziness and nausea, Terry drove to Memphis, Tennessee. On October 6, he returned to Atlanta, Georgia, where he saw a doctor on October 11. The doctor determined that Terry had suffered a brain injury.

Within days of the injury, Heartland filed an Iowa First Report of Injury. In December 1995, Heartland filed an Iowa First Supplemental Claim Activity Report and began paying weekly benefits.

## II. Proceedings.

On August 2, 1996, Terry filed an original notice and petition before the Iowa Industrial Commissioner. A deputy workers' compensation commissioner held a hearing on May 28, 1998, by which time Heartland had paid over 138 weeks of benefits. Heartland contended there was a lack of subject matter jurisdiction.

On June 15, the deputy issued an arbitration decision. The deputy ruled that (1) amendments to Iowa Code section 85.71 (1995) found in 1997 Iowa Acts, chapter 106, section 1, did not apply retroactively and (2) the commissioner had subject matter jurisdiction over Terry's claim pursuant to Iowa Code section 85.71 (1995).

Additionally, the deputy found that Terry had suffered permanent partial disability and ordered that Heartland pay Terry

healing period benefits for 96.57 weeks at the rate of $331.54 per week for the period from October 5, 1995 through August 12, 1997. The deputy also ordered Heartland to pay Terry permanent partial disability benefits for 325 weeks at the rate of $331.54 per week beginning August 13, 1997. The deputy allowed Heartland a credit against the award for weekly benefits that Heartland had already paid.

Heartland appealed the decision to the Iowa Industrial Commissioner.

Throughout all of this time, Heartland had been providing Terry's neurological care and treatment in his hometown of Athens, Georgia, through Dr. Antonio DaCunha, a neurologist in Athens. In October 1998, Terry moved to Senoia, Georgia, which is approximately 120 miles from Dr. DaCunha's office. Before the move, Dr. DaCunha recommended that Terry continue his care with Dr. Kenneth Lazarus. Dr. Lazarus' office is approximately ten miles from Terry's home in Senoia. Heartland refused to authorize treatment by Dr. Lazarus, insisting that Terry continue his treatment with Dr. DaCunha.

This refusal prompted Terry to file an application for alternate medical care on April 21, 1999. In the application, Terry requested that he be permitted to continue his neurological treatment with Dr. Lazarus. Terry also requested that Heartland pay for Viagra prescriptions ordered by Dr. DaCunha.

On April 22, Heartland filed a resistance to the application. Heartland also offered to continue Terry's treatment with Dr. Richard Bernstein of Atlanta, Georgia. Dr. Bernstein's office is approximately sixty miles from Terry's home in Senoia.

Following a hearing on the application, a deputy workers' compensation commissioner ordered, on May 3, that Heartland "provide reasonable and necessary medical care in the person of Dr. Lazarus." The deputy found that this was necessary to treat Terry's injury " 'without undue inconvenience to the employee' because of distance combined with the nature of Terry's malady." *See* Iowa Code § 85.27. The deputy also ordered that Heartland "furnish reasonable and necessary medications prescribed for treatment of Terry's condition, including the drug Viagra."

Finally, the deputy refused to rule on Heartland's contention that the commissioner lacked subject matter jurisdiction over the application for alternate medical care. The deputy noted that the issue had already been resolved in the earlier arbitration decision that was then on appeal to the commissioner. The deputy refused to rule, explaining that "no deputy workers' compensation commissioner has authority to overrule any other deputy." Because of a prior "order of delegation of authority" issued by the commissioner, the alternate medical care decision was deemed the final agency action.

On June 2, Heartland filed a petition for judicial review in the district court. Heartland challenged the deputy commissioner's award of medical care from Dr. Lazarus and medications, including the drug Viagra. Heartland also alleged that the deputy commissioner erred in finding the commissioner had subject matter jurisdiction of the dispute.

On June 17, Terry filed a "motion for judgment" requesting the alternate medical care decision be affirmed. Heartland resisted the motion and asked that the court remand the matter to the commissioner for review of the subject matter jurisdiction issue. Heartland requested in the alternative that the district court stay the matter pending the commissioner's determination of the arbitration appeal. Additionally, Heartland argued that under either Iowa Code section 85.71 or amended

section 85.71, the agency lacked subject matter jurisdiction over the claim.

On September 7, district judge Jack D. Levin denied Heartland's request for stay or remand. Additionally, the court sustained Terry's motion for judgment and affirmed the deputy commissioner's decision regarding alternate medical care. Heartland appealed from this ruling.

Meanwhile, on November 30, the chief deputy workers' compensation commissioner issued a ruling, affirming all aspects of the deputy commissioner's arbitration decision without separate analysis, except for the question of subject matter jurisdiction.

In a separate analysis on the subject matter jurisdiction issue, the chief deputy commissioner first determined that the 1997 amendments to Iowa Code section 85.71 apply prospectively—not retrospectively. For this reason, the chief deputy commissioner concluded that those amendments did not apply to this claim because the injury occurred before the amendments were enacted.

The chief deputy commissioner next determined that under section 85.71, the commissioner had subject matter jurisdiction over Terry's claim. In reaching that determination, the chief deputy commissioner found that at the time of the injury Terry was working under a contract of hire made in Iowa and his employment was not principally localized in Georgia or any other state, per the requirements of Iowa Code section 85.71.

Finally, the chief deputy commissioner concluded that even if the 1997 amendments were applicable, the commissioner still had subject matter jurisdiction because, before his injury, Terry spent a substantial part of his working time working for Heartland in Iowa.

On December 29, Heartland petitioned for judicial review in the district court. Among other things, Heartland alleged that the chief deputy commissioner erred in finding the agency had subject matter jurisdiction over Terry's claim.

On May 18, 2000, district judge Glenn E. Pille issued a ruling reversing the decision of the chief deputy commissioner. The court first determined that Iowa Code section 85.71 and the 1997 amendments were "more substantive than procedural," and on this basis concluded that the amendments should apply prospectively only.

However, the court then determined that the commissioner lacked subject matter jurisdiction over Terry's claim under the preamendment version of Iowa Code section 85.71(2) because "the contract for hire did not take place in Iowa." In light of this finding, the court concluded that it was unnecessary to reach the issue of whether Terry's employment was principally localized in any state.

Terry appealed from this ruling. Later, we consolidated the two appeals.

## III. Issues.

The pivotal issue on appeal is whether the commissioner had subject matter jurisdiction over Terry's arbitration and alternate medical care claims. This issue raises two questions. First, are the 1997 amendments to Iowa Code section 85.71 applicable to Terry's claim? Second, under either the amended or original version of Iowa Code section 85.71, did the district court err in concluding the commissioner lacked subject matter jurisdiction to consider Terry's claim for benefits?

If we find there was subject matter jurisdiction, Heartland argues—on the merits—that the district court erred in affirming the alternate care decision.

For reasons that follow, we conclude that under either version of section 85.71, the commissioner lacked subject matter jurisdiction. The conclusion we reach means we need not decide whether the 1997 amendments to section 85.71 should operate prospectively or retrospectively. In addition, we need not address the merits of the alternate medical care decision because that decision is void for lack of subject matter jurisdiction.

### IV. Scope of Review.

■ Iowa Code chapter 17A governs review of this workers' compensation decision. *See* Iowa Code § 86.26 (1999). The district court, exercising its power of judicial review under Iowa Code section 17A.19(8), acts in an appellate capacity to correct errors of law on the part of the agency. *IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 627 (Iowa 2000). The court may affirm the agency action or remand to the agency for further proceedings. Iowa Code § 17A.19(8). The court shall reverse, modify, or grant any other appropriate relief from the agency action if substantial rights of the petitioner have been prejudiced because of such action. *Id.*

■ In reviewing the district court's decision, this court applies the standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. *Al-Gharib*, 604 N.W.2d at 627. If our conclusions are the same as those of the district court, we affirm. *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 14 (Iowa 1993). Otherwise, we reverse. *Id.*

■ Iowa Code section 17A.19(8)(f) provides that, in a contested case, the court shall only grant relief from an agency decision that is unsupported by substantial evidence in the record made before the agency when the record is viewed as a whole. "Evidence is substantial when a reasonable mind could accept it as adequate to reach the same finding." *Bearce v. FMC, Corp.*, 465 N.W.2d 531, 534 (Iowa 1991).

### V. Subject Matter Jurisdiction.

■ **A. Background.** Iowa Code section 85.71 is a subject matter jurisdiction statute. *See Henriksen v. Younglove Constr.*, 540 N.W.2d 254, 256, 261 (Iowa 1995); *see also Christian v. Hirschbach Motor Lines, Inc.*, 496 N.W.2d 270, 273 (Iowa Ct.App.1992). The statute governs the industrialcommissioner's subject matter jurisdiction over workers' compensation claims based on injuries sustained outside the state. *See Henriksen*, 540 N.W.2d at 256; *Christian*, 496 N.W.2d at 273. Consequently, parties cannot confer such jurisdiction on the commissioner by waiver or consent. *See Bair v. Blue Ribbon, Inc.*, 256 Iowa 660, 665–66, 129 N.W.2d 85, 88 (1964); *see also Springville Community Sch. Dist. v. Iowa Dep't of Pub. Instruction*, 252 Iowa 907, 914, 109 N.W.2d 213, 217 (1961) (holding that a public agency has adjudicatory jurisdiction only as is conferred upon it by statute).

**B. Iowa Code section 85.71—the old and new version—and the respective rulings of the chief deputy commissioner and the district court.** On July 1, 1997, amendments to Iowa Code section 85.71 went into effect. *See* 1997 Iowa Acts ch. 106, § 1; *see also* Iowa Code § 3.7(1) (declaring effective date of legislation).

Following these amendments, section 85.71 read:

If an employee, while working outside the territorial limits of this state, suffers an injury on account of which the employee, or in the event of death, the employee's dependents, would have been entitled to the benefits provided by this chapter had such injury occurred within

this state, such employee, or in the event of death resulting from such injury, the employee's dependents, shall be entitled to the benefits provided by this chapter, *if* at the time of such injury *any of the following is applicable:*

1. The employment is principally localized in this state, that is, the employee's employer has a place of business in this or some other state and the employee regularly works in this state, or if *the employee's employer has a place of business in this state and* the employee is domiciled in this state.

2. The employee is working under a contract of hire made in this state in employment not principally localized in any state *and the employee spends a substantial part of the employee's working time working for the employer in this state.*

3. The employee is working under a contract of hire made in this state in employment principally localized in another state, whose workers' compensation law is not applicable to the employee's employer.

4. The employee is working under a contract of hire made in this state for employment outside the United States.

1997 Iowa Acts ch. 106, § 1(codified at Iowa Code § 85.71 (Supp.1997)) (emphasis added). The italicized language reflects the significant amendments.

As mentioned, the chief deputy commissioner first determined that the amendments applied prospectively and not retrospectively. For this reason, the chief deputy concluded that the amendments did not apply to Terry's claim because his injury occurred before the amendments were enacted.

The chief deputy next concluded that the commissioner had subject matter jurisdiction over Terry's claim. Applying subsection 2 of the old version of section 85.71,

the chief deputy found that at the time of Terry's injury, Terry was working under a contract of hire made in Iowa and that his employment was not principally localized in Georgia or any other state. The chief deputy also concluded that even under the new version of section 85.71, the commissioner still had subject matter jurisdiction because, before his injury, Terry spent a substantial part of his working time working for Heartland in Iowa.

The district court likewise concluded the amendments applied prospectively only. However, the court concluded the commissioner lacked subject matter jurisdiction over Terry's claim under subsection 2 of the old version of Iowa Code section 85.71 because the contract for hire did not take place in Iowa. In light of its conclusion, the court determined it was unnecessary to reach the issue of whether Terry's employment was principally localized in any state.

The issue therefore narrows down to whether there was substantial evidence to support the chief deputy's finding that the contract of hire took place in Iowa. *See Anstey v. Iowa State Commerce Comm'n,* 292 N.W.2d 380, 384 (Iowa 1980) (holding that substantial evidence test governs review of agency action regarding jurisdictional facts). Because the contract-of-hire requirement is found in subsection 2 of both versions of section 85.71, we need not determine whether the amendments apply prospectively only.

**C. Analysis.** This court has held that

[g]enerally speaking, the place of making a contract is determined according to the parties' intention. As a rule this is considered to be the place where the offer is accepted, or where the last act necessary to a meeting of the minds, or to complete the making of the contract, is performed.... [T]he place of contract is the place where the acceptance is

made, as, if a resident of one state places a letter in the mail making an offer to one who resides in another state, the contract would be completed where the acceptance is mailed. Such is the general rule.

*Burch Mfg. Co. v. McKee*, 231 Iowa 730, 735–36, 2 N.W.2d 98, 101 (1942) (citations omitted).

■ These rules apply when considering jurisdictional matters under Iowa Code section 85.71. *See George H. Wentz, Inc. v. Sabasta*, 337 N.W.2d 495, 500 (Iowa 1983) ("Generally, the place a contract is formed is where the meeting of minds occurs, or where the final act necessary to form a binding contract takes place."), *overruled on other grounds by Henriksen*, 540 N.W.2d at 258.

Applying these rules, the district court reasoned:

> [Heartland] argues that the final act necessary took place in Georgia when Heartland's representative offered Terry the job and Terry accepted. [Terry] contends that the actual offer took place when [he] submitted his application, and the acceptance of his offer took place in Iowa when Heartland decided to hire him. While [Terry's] argument is creative, it is not persuasive. Even if the court accepted [Terry's] argument as true, Heartland would need to communicate to Terry that it had accepted his offer, and until that communication occurred, there was no meeting of the minds. In any event, the offer for employment took place when Heartland's representative in Georgia offered Terry the job as truck driver and Terry accepted. The Commissioner's decision to the contrary is not supported by substantial evidence. He determined that the contract was formed in Iowa because Terry testified that his application would have to be forwarded to Iowa for investi-

gation and processing, and that evidence was not challenged by Heartland. Even if true, the test for when a contract is formed is not where investigation and processing takes place; it is where the meeting of the minds occurs. This was clearly Georgia when Terry accepted Heartland's offer of employment.

As the following discussion shows, the district court was right on the mark.

On February 2, 1994, Terry completed an "Application for Qualification" in Forest Park, Georgia, where Heartland maintained a trucking "terminal." Terry had read a Heartland ad in the classified section of an Atlanta, Georgia newspaper. The ad indicated Heartland was hiring truck drivers and gave a phone number to call at the Forest Park, Georgia terminal. Terry called the number and asked the individual who answered if he could come down and fill out an application. The individual said "yes" and told Terry to come down.

When asked to describe what happened when he filled out the application, Terry testified:

> A. I filled—I filled out this application here and gave it back to the person that had given it to me, and he told me that he would have to forward this on to Coralville [, Iowa] for approval, and then—for me to get back with him in a day or two, which would have made it on a Friday.
>
> Q. Did he explain to you what he meant by getting approval from Coralville? A. Other than that they would have to okay whether he would hire me or not.

Terry also testified that during the hiring process he never came to Iowa. He also testified that he never spoke by telephone with anybody in Iowa. He further testified that during the hiring process all

of his discussions with Heartland personnel occurred in Georgia.

On February 4, 1994, Terry contacted the Forest Park terminal to inquire about the status of his application. Terry testified as follows about that conversation:

Q. Okay. And when you called, they told you that you were hired, I assume? A. That—that—yes, and to be at the orientation, which started Monday morning.

. . . .

Q. Well, when you called them that day, did they tell you you were hired? A. I took for granted that I was when he asked me to come to the orientation.

Q. Okay. So at least when you got done with the conversation, you thought you'd been hired by Heartland Express; right? A. Correct.

Heartland contends that the offer of employment was not made until the conversation between Terry and the Heartland employee on February 4 and that Terry accepted that offer during their conversation. Terry asserts that Heartland made the acceptance in Iowa when it "approved" his application.

Both parties focus on *where* the terms of the contract were accepted. They spend little time discussing *when* the offer of employment was actually made. Under Terry's theory that Heartland accepted an offer of employment, he must show that there was an offer that Heartland could accept. For Terry's argument to hold true, it must necessarily follow that the application was such an offer.

 **1. Offer.** "All contracts must contain mutual assent; mode of assent is termed offer and acceptance." *Anderson v. Douglas & Lomason Co.,* 540 N.W.2d 277, 285 (Iowa 1995). An offer is a " 'manifestation of willingness to enter into a bargain, so made as to justify another

person in understanding that his assent to that bargain is invited and will conclude it.' " *Id.* (quoting Restatement (Second) of Contracts § 24 (1979)). We determine whether an offer has been made objectively—not subjectively. *Id.* " 'The test for an offer is whether it induces a reasonable belief in the recipient that [the recipient] can, by accepting, bind the sender.' " *Id.* at 286 (quoting *Architectural Metal Sys., Inc. v. Consol. Sys., Inc.,* 58 F.3d 1227, 1229 (7th Cir.1995)).

 In applying this objective test of intent, "we look for terms with precise meaning that provide certainty of performance." *Id.* "[I]f an offer is indefinite, there is no intent to be bound." *Id.* Here, we must determine whether the terms of Terry's application were "sufficiently definite" so as to constitute an offer. *See Phipps v. IASD Health Servs. Corp.,* 558 N.W.2d 198, 203 (Iowa 1997). Such a determination is a question of law. *See id.*

Terry's application contains no provisions or terms of employment whatsoever. The application does not contain a promise by Terry to do something or a request that Heartland do something in exchange. We noted in *Anderson* that

"a lack of essential detail would negate such a belief [of intent], since the sender could not reasonably be expected to empower the recipient to bind him to a contract of unknown terms.... [T]he recipient of a hopelessly vague offer should know that it was not intended to be an offer that could be made legally enforceable by being accepted."

540 N.W.2d at 286 (quoting *Architectural Metal Sys.,* 58 F.3d at 1229).

Even a simple statement of Terry's primary duty coupled with Heartland's obligation to pay him might have sufficed. *See Magnusson Agency v. Pub. Entity Nat'l Company–Midwest,* 560 N.W.2d 20,

26 (Iowa 1997) (holding that terms of offer were sufficiently definite where it was stated that plaintiff would service an insurance account for a three-year period, and defendant would pay him a commission for his services; court noted that it was not significant that plaintiff did not discuss the specific amount of his commission in the offer). However, without these essential provisions, we cannot consider Terry's application as an offer of employment. *See id.; see also* 1 Arthur L. Corbin, *Corbin on Contracts* § 1.11, at 31 (Joseph M. Perillo rev. ed.1993) [hereinafter *Corbin on Contracts* ] (noting that offer must contain all the terms of the contract to be made, including a promise to do something and what the other party must do in exchange); 1 Samuel Williston, *Williston on Contracts* § 4:7, at 296 (Richard A. Lord 4th ed.1990) (noting that whether an offer exists depends in part on "whether the facts show that some performance was promised in positive terms in return for something requested by the person making the promise").

Additionally, other aspects of the application make clear that it was not intended as an offer. The application is entitled "Application for Qualification" and begins with the following statement:

The purpose of this application is to determine whether or not the applicant is qualified to operate Motor Carrier equipment according to the requirements of the Federal Motor Carrier Safety Regulations and the Company named above.

More important, in the following statement, the application disclaims any notion that it is intended to constitute an offer: "It is agreed and understood that this application for qualification in no way obligates the motor carrier to employ the applicant."

Obviously, the application was only meant to determine whether Terry would meet Heartland's employment requirements. The record shows that Terry understood this:

Q. Okay. Does it say right there on the front page of the application that this application is being filled out for them, Heartland, to check if you would meet the requirements of the company named above, and that company is Heartland Express, Inc., of Iowa in Coralville, Iowa? A. Yes.

Q. Did you see that when you filled out the application? A. Yes, sir, I knew that.

We conclude that the application as a matter of law was not "sufficiently definite" to constitute an offer of employment that Terry work for Heartland. At most, it was nothing more than a solicitation or invitation of an offer by Terry to Heartland that he work for Heartland. *See Harden v. Maybelline Sales Corp.*, 230 Cal.App.3d 1550, 1555, 282 Cal.Rptr. 96, 99 (1991) ("[A]n application for employment is not a contract; it is a mere solicitation of an offer of employment."); *see generally Corbin on Contracts* § 2.3, at 111 ("Request for an offer is not an offer .").

Because the application was not an offer of employment, there was not, nor could there have been, a contract for hire made when Heartland "approved" Terry's application. Based on this record, the earliest evidence of an offer of employment occurred during the phone conversation Terry had with a Heartland employee on February 4 in Georgia. That offer came from Heartland. The record further suggests that Terry accepted the offer. As mentioned, Terry testified:

Q. Okay. So at least when you got done with the conversation, you thought you'd been hired by Heartland Express; right? A. Correct.

Because Georgia was the place where Terry accepted Heartland's offer of employment, Georgia was the place where the contract of hire was made. *See Burch,* 231 Iowa at 735–36, 2 N.W.2d at 101; 99 C.J.S. *Workers' Compensation* § 72, at 144–45 (2000) ("Where the worker's acceptance of an offer of employment is given by telephone, the place of contracting is where the acceptor speaks his or her acceptance . . . ."); *see also* Restatement (Second) of Contracts § 64. cmt. c ("To the extent the issue [of where an acceptance takes effect] is referred to the rule governing private contract disputes, the analogy of acceptance by mail or telegram is controlling in cases of contract made by parties in each other's presence and also in cases of contracts made by telephone or teletype: the contract is created at the place where the acceptor speaks or otherwise completes his manifestation of assent."). For this reason, subject matter jurisdiction of Terry's claims was lacking under section 85.71(2). The district court was correct in so concluding.

**2. Construing the application as an offer.** Even assuming the application was an offer, there still remains the question of where the offer was actually accepted. As mentioned, Terry contends the offer was accepted in Iowa because that is where his application was approved. Heartland contends that (1) there is no evidence the application was approved in Iowa; (2) mere approval of the offer did not amount to an acceptance of that offer; and (3) the actual acceptance occurred in Georgia during the phone conversation on February 4 when Heartland's employee communicated the acceptance to Terry.

A binding contract requires an acceptance of an offer. *Magnusson,* 560 N.W.2d at 26. An "[a]cceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." Restatement (Second) of Contracts § 50.

We first consider whether substantial evidence supports a finding that the offer was accepted in Iowa. As Heartland correctly notes, there is a lack of evidence establishing that Heartland approved the application in Iowa. Although Terry testified that he was told the application would be sent to Iowa for approval, there was no evidence indicating that Heartland actually processed and approved the application in Iowa.

Even assuming that Heartland approved the application in Iowa, such an assumption does not mean that the offer was accepted there for purposes of contract law. As *Burch* makes clear, the place of making a contract is determined according to the parties' intentions and generally this is considered to be where the offer is accepted. 231 Iowa at 735–36, 2 N.W.2d at 101.

Terry argues that once Heartland accepted the offer in Iowa, that was enough to make a binding contract. This is not so. Assuming that in approving the application, Heartland could be said to have accepted Terry's offer, such acceptance must still be communicated or delivered to Terry. *See Hayne v. Cook,* 252 Iowa 1012, 1020–1022, 109 N.W.2d 188, 191–92 (1961) (holding that for an acceptance of an offer to be effective it must be delivered or communicated to the offeror).

As Heartland argues, mere acceptance of an offer does not necessarily make a binding contract. "[A] mere private uncommunicated assent will not effect a contract." 17A Am.Jur.2d *Contracts* § 71, at 95 (1991).

Heartland also contends that acceptance could not result from mere silence on its part. This is true. *See Ducommun v.*

*Johnson,* 252 Iowa 1192, 1197, 110 N.W.2d 271, 274 (1961) (holding that silence and inaction do not amount to an acceptance of an offer and mere silence or failure to reject an offer does not constitute an acceptance).

Terry responds that this rule is only a general rule and that in any event this case does not involve assent by silence because there was a communication. As Terry implies, there are exceptions to the rule that silence and inaction do not amount to an acceptance of an offer. None of those exceptions, however, apply here. *See* Restatement (Second) of Contracts § 69 (noting three exceptions where silence and inaction operate as acceptance, none of which apply here).

■ Terry's position is that Heartland communicated its acceptance when it contacted the Forest Park terminal. Assuming that Heartland in Coralville accepted the offer and communicated this acceptance to its Forest Park employee, this fact is not enough to establish a binding contract. The rule is that where an offeree conveys an acceptance to its agent, there is no actual acceptance until the agent delivers that acceptance to the offeror. *See Darling v. Nineteen–Eighty Corp.,* 176 N.W.2d 765, 768 (Iowa 1970) ("If the agent was agent for the offeree only, the act of mailing the papers to him would not constitute an acceptance and could be recalled at any time until actual delivery to the offeror."). The mere fact that Heartland in Coralville may have communicated its acceptance to its Forest Park terminal does not satisfy the requirement of delivery or communication of acceptance to Terry. Acceptance on the part of Heatland was not made until it was communicated by its Forest Park representative to Terry during their phone conversation which occurred in Georgia. We conclude there was not substantial evidence to support the chief deputy commissioner's finding that acceptance occurred in Iowa. For this reason, the chief deputy commissioner erred in concluding the contract of hire occurred in Iowa.

## VI. Disposition.

Because the chief deputy workers' compensation commissioner erred in concluding the contract of hire occurred in Iowa, we conclude the commissioner lacked subject matter jurisdiction of Terry's original claim for benefits. The district court did not err in so concluding. We therefore affirm that decision. However, because subject matter jurisdiction was lacking, the district court erred in affirming the award of alternate medical care. That decision is vacated.

**AFFIRMED IN PART AND VACATED IN PART.**