# IN THE COURT OF APPEALS OF IOWA

No. 20-1017
Filed May 12, 2021

IN RE THE MARRIAGE OF BYRON C. WILLIAMSON
AND VICKI L. HOVER-WILLIAMSON

Upon the Petition of
BYRON C. WILLIAMSON,
     Petitioner-Appellee,

And Concerning
VICKI L. HOVER-WILLIAMSON,
     Respondent-Appellant.

_____

     Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin,

Judge.


     Vicki Hover-Williamson appeals from a decree of dissolution of marriage

and order approving final stipulation claiming there was no mutual assent to the

stipulation. **REVERSED AND REMANDED.**


     Matthew G. Sease and Kylie E. Crawford of Sease & Wadding, Des Moines,

for appellant.

     Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellee.


     Considered by Doyle, P.J., and Mullins and May, JJ.

**DOYLE, Presiding Judge.**

Vicki Hover-Williamson appeals from the decree of dissolution of marriage and order approving final stipulation. Vicki argues the district court erred in enforcing the stipulation and agreement because there was no mutual assent "regarding the purported agreement's scope and various provisions." After our de novo review we find that the parties did not mutually assent to those issues the district court decreed were agreed upon in the court-ordered stipulation and agreement filed by the parties. We reverse the district court's ruling granting Byron Williamson's motion to enforce settlement agreement and order approving final stipulation. And to avoid any confusion, we do not vacate that portion of the decree that dissolves the parties' marriage. We remand the case to the district court for a full consideration of the issues presented and the entry of an appropriate decree.

## I. Facts and Procedural History.

Byron and Vicki married in 2003. In June 2018, Byron petitioned for dissolution of marriage. Vicki answered and the usual pretrial matters and discovery began. Vicki retained new counsel and her original counsel withdrew. Discovery continued. Trial was continued once and set for October 29, 2019. A mediation was held. The parties continued to prepare for the trial. Witness and exhibit lists were filed. On the morning the trial was to begin, Byron's attorney emailed the trial judge (copying in Vicki's attorney) notifying the judge that "We were able to settle the Williamson case last night." He asked for ten to fourteen days to get a stipulation to the judge for review and approval. That same morning, Byron's attorney emailed Vicky's attorney with the subject: "Williamson Confirmation." He said,

> Thank you and Vicki for your work last night in getting this resolved. Just to confirm some of the highlights, I've summarized what I believe to be our agreement below. Let me know if I've missed anything, and we can fill in some of the blanks as we work through the Stipulation.

The summary sets forth terms of agreement on twelve issues concerning child custody/parenting time, child support, and property division. The court cancelled the trial and ordered that a stipulated order be filed by November 13.

Apparently it was agreed that Vicki's attorney would prepare the stipulation. On November 4, Byron's attorney sent Vicki's attorney an email, "Any progress on this?" The next day Vicki's attorney responded, "Hey, I'm sorry! I'll get this over to you ASAP after I get it walked thru with Vicki." After not hearing anything further, Byron's attorney emailed Vicki's attorney on November 13, 20, 25, and December 15 requesting progress reports. Finally, on December 20, Vicki's attorney emailed Byron's attorney her draft of the parties' stipulation and agreement, and "look[ed] forward to discussing the same." Byron's attorney responded the next day with Byron's suggested changes—thirteen of them. He noted "none of these are major issues." He asked that Vicki's attorney get back to him "asap to finalize this." Vicki's attorney emailed back, "Will do. Will be in the office tomorrow and will connect with Vicki."

On January 2, 2020, Byron's attorney emailed Vicki's attorney, "any update on this?" A week later Vicki's attorney withdrew from the case and another attorney filed his appearance on behalf of Vicki.

On January 29, Byron moved to enforce the settlement agreement. Vicky resisted and alleged there was no agreement because there was never a "meeting of the minds" between Vicky and Byron on the financial issues. At the May 7

contested hearing, Byron's attorney argued there was a settlement between the parties:

> Particularly both parties indicated to the Court on October 29th that the case was settled, not that there was additional negotiations, not that they needed more time, but the case was resolved.

He said up until the motion to enforce was filed, Vicki never once disputed there was an agreement. He argued the post-agreement back-and-forth between counsel was over "clean-up language," "tweaks," "minor changes," and "specific language." Vicki's attorney, who was not involved in the original settlement negotiations, countered that there was just an agreement to agree, there was no meeting of the minds, and that the parties did not reach a total agreement—that issues needed to be resolved. He said Vicki believed she was still negotiating. He suggested, "This was at best a last-minute attempt by the parties and their attorneys to avoid having to go to trial the next day." He noted last-minute settlement agreements often fall apart, as here, if a written document signed by the parties and their counsel is not obtained before everyone leaves the mediation or settlement room.

The district court found,

> This dissolution of marriage action has been pending for almost two years. Trial was originally scheduled for June 4, 2019, but was continued to October 29, 2019. After extensive discovery and negotiations, counsel for [Byron], with [Vicki]'s counsel's consent, notified the court on the eve of trial that an agreement had been reached between the parties and that the trial would not be necessary. The court then entered an Order on October 29, 2019, canceling the trial and directing a stipulated Order to be submitted by November 13, 2019.
> On October 29, 2019, counsel for [Byron] sent an email to [Vicki's counsel] summarizing what he believed to be the parties' agreement. It is clear from the ensuing correspondence between counsel that it was intended that [Vicki]'s counsel prepare the

Stipulation. There was a considerable delay in producing this document in spite of [Byron]'s counsel's diligent prodding. [Vicki]'s counsel finally submitted a proposed Stipulation to [Byron]'s counsel on December 20, 2019. The following day, [Byron]'s counsel sent an email to [Vicki]'s counsel with several proposed changes to the draft Stipulation. (exhibit references omitted).

The court determined,

Here, it is plainly evident that the parties intended to and did reach agreement on many issues. Counsel for both parties agreed to notify the court of an agreement and request that the trial be canceled. [Byron]'s counsel provided [Vicki]'s counsel with a summary of an agreement. [Vicki]'s counsel never denied the existence of an agreement, and responded with a draft stipulation largely consistent with that summary. The relatively few issues in dispute were noted by [Byron]'s counsel in his responsive email of December 21, 2020. As there is no documentation of any agreement as to those issues, they will have to be left for the court to try. (exhibit reference omitted).

The court found the parties' agreement was documented in Vicki's December 20, 2019 proposed stipulation, with thirteen exceptions. The court approved the agreement and ordered it would enforce the agreement except for twelve issues reserved for trial. Those issues being:

1. notice for summer vacation time;
2. possession of children's passports;
3. what, if any, good cause exists to deviate from the Iowa Child Support Guidelines;
4. which party will maintain health insurance for the children;
5. the parties' responsibility for payment of uncovered medical expenses for the children;
6. post-secondary education subsidy for the children;
7. whether or when [Vicki] will be required to refinance the mortgage indebtedness on the real estate awarded to her;
8. whether or when [Byron] will be required to refinance the mortgage indebtedness on the real estate awarded to him;
9. whether [Byron] will receive any mortgage interest and real estate tax deductions paid in 2018 and 2019 to claim on his individual federal and/or state tax returns;
10. disposition of the 1989 GMC Jimmy, end table near the couch and the overstuffed rocking chair;

11. whether [Vicki]'s FERS pension should be divided before or after deduction for health insurance.

12. Court costs and attorney fees associated with the trial of the above reserved issues.

The court ordered Byron's attorney to prepare a proposed order "setting forth and approving the parties' stipulation consistent with the above ruling," and ordered it be submitted for court approval by June 10, "with such proposed order approved by counsel for [Vicki] as to form only." The court ordered the parties to schedule a trial on the remaining twelve issues to take place within sixty days. Trial was set for July 23.

Following the court's order, the parties submitted to the court a stipulation and agreement, approved as to form by the parties' counsel. It was not signed by either of the parties. The introductory paragraph states, in part:

> The parties, by their counsels' signatures below, report to the Court they have resolved all issues contained herein, with the excepted issues set forth below, and the following represents their proposed disposition. By submitting this Stipulation and Agreement, [Vicki] does not waive any appeal rights regarding the Court's Order to Enforce Settlement Agreement and the court's Decree adopting the same.

On July 6, 2020 the district court entered a decree of dissolution of marriage and order approving and adopting the stipulation. The court reserved jurisdiction to determine at the trial scheduled for July 23 the issues of: children's health insurance, start date of child support obligation, whether a reduction or deviation from the *Benson*[1] formula should be applied to Vicki's FERS account for purposes of medical insurance coverage, division of an end-table, and payment of attorney

---

[1] *In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996) (approving a percentage method of allocating pension benefits under a formula).

fees and costs.[2]  Trial on those issues took place on July 23.  Vicki hired appellate counsel and appealed from the court's July 6 order.[3]  The supreme court determined the district court's July 6 order was a final order for purposes of appeal, citing *Fenchel v. Fenchl*, 268 N.W.2d 207,209 (Iowa 1978) (stating a final decree is the one in which the marriage is terminated).  The appeal was allowed to proceed.  In September 2020, the district court entered an order "determin[ing] that it has been divested of jurisdiction to enter any orders stemming from the trial of July 23, 2020 while the above described appeal is pending, in the absence of an Order of Limited Remand from the appellate court."

## II.    Standard of Review.

We review equity actions, including dissolutions of marriage, de novo.  *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).  De novo review means we examine the entire record and adjudicate the issues anew.  *See id.* While not binding, we give weight to the district court's factual findings, particularly concerning witness credibility.  *See* Iowa R. App. P. 6.904(3)(g).  We will disturb the district court's rulings only when they fail to provide an equitable resolution. *See McDermott*, 827 N.W.2d at 676.

---

[2] Bifurcated divorces are not permitted.  *See In re Marriage of Thatcher*, 864 N.W.2d 533, 539 (Iowa 2015) ("We conclude the plain language of this provision [Iowa Code § 598.21] requires a division of property contemporaneous with the decree of dissolution.").  Neither party raised the issue before the district court or on appeal.  It would be improvident of us to vacate the decree of dissolution over the court's failure to divide an end-table at the same time as the decree.

[3] Vicki's notice of appeal notes "Trial on issues reserved by Polk County District Court in July 6, 2020 Order occurred on July 23, 2020.  Written ruling is forthcoming."

### III.   Analysis

Vicki claims she and Byron did not reach a binding settlement agreement. "A stipulation and settlement in a dissolution proceeding is a contract between the parties." *In re Marriage of Jones*, 653 N.W.2d 589, 593 (Iowa 2002). "It is enforceable like any other contract, and a party may not withdraw or repudiate the stipulation prior to entry of judgment by the court." *Id.* at 589. "Settlement agreements are essentially contracts, and general principles of contract law apply to their creation and interpretation." *Sierra Club v. Wayne Weber LLC*, 689 N.W.2d 696, 702 (Iowa 2004) (citations omitted). "In order to be bound, the contracting parties must manifest their mutual assent to the terms sought to be enforced." *Id.* (citation omitted). In other words, the parties must express their mutual assent to the terms of the contract. *Schaer v. Webster Cty.*, 644 N.W.2d 327, 338 (Iowa 2002). Mutual assent depends on objective evidence, not the hidden intent of the parties. *Id.* "Mutual assent is present when it is clear from the objective evidence that there has been a meeting of the minds." *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010).

The mode of assent is termed offer and acceptance. *Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 268 (Iowa 2001). A binding contract also requires acceptance of the offer. *Magnusson Agency v. Pub. Entity Nat'l Co.-Midwest*, 560 N.W.2d 20, 26 (Iowa 1997). Acceptance of an offer is a manifestation of assent to the terms made by the offeree in a manner invited or required by the offer. *Heartland Express*, 631 N.W.2d at 270 (citing Restatement (Second) of Contracts § 50). "The rule is well settled that in a contract by offer and acceptance, the acceptance must conform strictly to the offer in all its conditions, without any

deviation or conditions whatever," or otherwise "there is no mutual assent and therefore no contract." *Shell Oil Co. v. Kelinson*, 158 N.W.2d 724, 728 (Iowa 1968).

We view Vicki's December 20, 2019 proposed stipulation and agreement as the offer. Byron did not accept the offer "in all its conditions, without any deviation or conditions whatever." Instead, he made a counter-offer. Byron suggested thirteen changes to Vicki's proposal, although none were "major issues." At this point there was no mutual assent and therefore no contract. In response to Byron's counter-offer Vicki's attorney said she would "connect with Vicki." Vicki never accepted or even responded to Byron's counter-offer. Again, at this point there was no mutual assent and therefore no contract.[4] There is no objective evidence to the contrary. We conclude the district court erred in determining a binding settlement agreement had been reached by the parties.[5]

We reverse the district court's ruling granting Byron's motion to enforce settlement agreement and order approving final stipulation. And to avoid any confusion, we do not vacate that portion of the decree that dissolves the parties' marriage. We remand the case to the district court for a full consideration of the issues presented and the entry of an appropriate decree.

---

[4] It is not uncommon in divorce cases for the parties to ask the court to endorse the parties' agreement on those issues to which they agree while reserving the unresolved issues for trial. *See, e.g.*, *In re Marriage of Briddle*, 756 N.W.2d 35, 38 (Iowa 2008) (noting the parties stipulated an agreement regarding child custody and visitation matters, but reserved the issues of child support, spousal support, ad property division for trial). But that is not what happened here.

[5] According to the pleadings, the one thing the parties did agree on is that "There has been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that this marriage can be preserved."

Costs are taxed one-half to each party.

**REVERSED AND REMANDED.**