# IN THE COURT OF APPEALS OF IOWA

No. 14-1272
Filed August 5, 2015

**FIRST AMERICAN BANK,**
    Plaintiff-Appellee,

**vs.**

**URBANDALE LASER WASH, LLC,**
**WALNUT CREEK LASER WASH, LLC,**
**and STEVEN GOLDEN,**
    Defendants-Appellants.

_____

Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.

Defendants appeal from the district court's ruling granting summary judgment in favor of the plaintiff in a foreclosure action. **AFFIRMED.**

Matthew E. Laughlin and Sarah E. Crane of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellants.

Nicholas Cooper and William C. Scales of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DANILSON, C.J.**

First American Bank initiated a foreclosure action against Urbandale Laser Wash, LLC, Walnut Creek Laser Wash, LLC, and Steven Golden (collectively referred to as Golden). Golden responded and claimed as an affirmative defense that the two parties had reached a forbearance agreement that precluded foreclosure. Golden also filed four counterclaims: (1) First American's breach of the forbearance agreement was a breach of contract; (2) First American's freezing of Golden's bank accounts was a breach of the bank account agreements; (3) First American converted the funds in Golden's bank accounts; and (4) First American breached its duty of good faith and fair dealing. First American filed a motion for summary judgment. Golden resisted First American's motion and filed a cross-motion for summary judgment. The district court granted First American's motion for summary judgment in whole and dismissed Golden's counterclaims.

Here, Golden maintains there is a genuine issue of material fact whether the parties reached a forbearance agreement so First American was not entitled to summary judgment in the foreclosure action. Golden also maintains First American was not entitled to summary judgment on Golden's counterclaims.

Because we find there was no meeting of the minds between the parties to form a second forbearance agreement as a matter of law, the district court's ruling granting First American's motion for summary judgment on the foreclosure claim and dismissing the corresponding counterclaim was proper. Additionally, because First American's placement of the administrative hold on Golden's bank accounts and use of the funds was done pursuant to agreement between the

parties, the district court properly dismissed Golden's remaining counterclaims. Thus, we affirm the district court's ruling granting First American's motion for summary judgment in whole and dismissing each of Golden's counterclaims.

**I. Background Facts and Proceedings.**

This case involves two loans—totaling approximately $2,679,000—that Steven Golden took out to purchase and operate two car washes. On April 17, 2009, he executed two promissory notes payable to First American. The promissory notes were secured by two mortgages on the real estate, two security agreements, and two limited guaranties by Steven Golden individually.

The notes were originally set to mature on April 17, 2012, but First American and Golden executed a change in terms agreement to extend the maturity date until July 5, 2012. The modification agreement was in writing and signed by the parties.

Golden defaulted on the loans in July 2012, but First American continued to negotiate with Golden to attempt to reach a modification, which would include a forbearance agreement.

On April 17, 2013, Steven Phipps, a special assets officer for First American, prepared a modification request for submission to its director loan committee based on his understanding of the terms of the proposed loan restructure. A separate modification request was submitted for each loan, and both requests listed "requested change[s]" of adding Golden Enterprises, LTD as a limited guarantor of $350,000 and Steven Golden individually as an unlimited guarantor.

On April 30, 2013, Phipps sent Steven Golden an email stating, "The requests did not get to committee this week, but will go next Tuesday. I made the adjustment to the forbearance agreement as discussed and will change dates to May instead of April."

Golden made interest payments on May 6, 2013, in the amount of $18,415.321.[1]

On May 7, 2013, First American's director loan committee met and approved the modification request that had been submitted on April 17.

On May 8, 2013, Phipps sent Steven Golden an email stating, in part, "Both loans were approved in committee late yesterday. I would estimate documents would be ready either Friday or early next week (usually takes 2-3 days after they receive formal approval)."

On May 23, 2013, Phipps sent Steven Golden an email with the updated forbearance agreements attached "for [his] review."

On May 24, 2013, Steven Golden sent Phipps an email advising him that he would not be able to keep their scheduled meeting to sign documents the next day because his attorney had not yet reviewed and approved the agreement.

On June 5, 2013, Golden sent his attorney, Joel Templeman, an email, stating in part:

> I am forwarding to you the e-mail chain of discussions with First American Bank concerning financing of the two car washes called Urbandale Laser Wash and Walnut Creek Laser Wash. There are quite a few e-mails but they are mostly short. Am sending you this "stuff" so you get the flavor of negotiations. We are close to an agreement but there are some items I do not want to agree to

---

[1] Golden made interest payments periodically after the July 2012 default. He made seven payments between July 27, 2012, and March 7, 2013.

without discussion with you and one item I do not want to agree to period. In this case I need you to be the "bad guy." It concerns the personal guarantee.

On June 25, 2013, Golden's new attorney, Matthew Laughlin, sent an email to First American listing thirteen issues with the proposed forbearance agreement and associated documents. The attorney stated he had reviewed the documents with Steven Golden and asked First American to send revised documents with the changes if they were acceptable. One of the proposed changes was to remove Golden as a co-borrower and instead allow him to continue with the previous limited guarantees.

On June 28, 2013, First American sent Golden a notice for default and demand for payment reflecting the amount due that day—$2,508,720.22. The demand stated, "Please remit such payment on or before July 15, 2013 . . . ." The same day, First American placed an administrative hold on, or "froze" Golden's small business accounts. At the time, the accounts totaled $38,265.06 although the amount grew to approximately $48,419 as receipts continued to be deposited into the accounts.

On July 13, 2013, First American filed a petition for mortgage foreclosure and foreclosure of security agreements.

On August 16, 2013, Golden filed an answer, affirmative defenses, and counterclaims. As an affirmative defense, Golden maintained First American had entered into a forbearance agreement and was in breach of that agreement. Golden also asserted four counterclaims: (1) First American's breach of the forbearance agreement was a breach of contract, (2) First American's freezing of Golden's bank accounts was a breach of the bank account agreements, (3) First

American converted the funds in Golden's bank accounts, and (4) First American breached its duty of good faith and fair dealing. First American filed a motion for summary judgment.

On January 3, 2014, First American retroactively set off the "frozen" funds in the small business accounts against the indebtedness owed by Golden effective June 28, 2013. The funds were applied to the principal balance owed.

On January 24, 2014, First American filed a motion for summary judgment.

On March 7, 2014, Golden filed a resistance to First American's motion for summary judgment and a cross-motion for summary judgment.

On May 7, 2014, the district court ruled on the motions. The court found the parties "never reached mutual asse[n]t on a forbearance agreement," and Golden had no affirmative defense to the foreclosure action. Regarding Golden's counterclaims, the district court found there was not a forbearance agreement so First American could not have breached it. The court also found First American was entitled to freeze the small business accounts for setoff under the terms of the contract and at common law. The court granted First American's motion for summary judgment in whole. Golden's motion for summary judgment was denied and the counterclaims were dismissed with prejudice.

On June 2, 2014, Golden filed a motion to enlarge, amend, or reconsider the district court's ruling. First American resisted, and the district court denied the request on July 9, 2014. The same day, the district court entered judgment and decree of foreclosure against Golden.

Golden appeals.

## II. Standard of Review.

We review summary judgment rulings for correction of errors at law. *Crippen v. Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). A question of fact exists "if reasonable minds can differ on how the issue should be resolved." *Walker v. Gribble*, 689 N.W.2d 104, 108 (Iowa 2004). In reviewing the district court's ruling, the evidence presented must be viewed in the "light most favorable to the party opposing the motion for summary judgment." *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 641 (Iowa 2000); *Gen. Car & Truck Leasing Sys., Inc. v. Lane & Waterman*, 557 N.W.2d 274, 276 (Iowa 1996). However, the opposing party "may not rest upon the mere allegations of his pleading but must set forth specific facts showing the existence of a genuine issue for trial." *Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005); *see also* Iowa R. Civ. P. 1.981(5). Speculation is insufficient to create a genuine issue of material fact. *Hlubek,* 701 N.W.2d at 96.

## III. Discussion.

### A. Forbearance Agreement.

The district court concluded the parties had not reached a forbearance agreement. Golden maintains there is at least a genuine issue of material fact whether a forbearance agreement was reached, so summary judgment was not

proper.[2] Also, Golden maintains the district court wrongly made determinations of witness credibility, as well as inferences and findings of fact in the moving parties' favor in determining the parties had not reached a forbearance agreement.

> Iowa Code section 535.17(2) (2013) provides, in part:
>
> Unless otherwise expressly agreed in writing, a modification of a credit agreement which occurs after the person asserting the modification has been notified in writing that oral or implied modifications to the credit agreement are unenforceable and should not be relied upon, is not enforceable in contract law by way of action or defense by any party unless a writing exists containing the material terms of the modification and is signed by the party against whom enforcement is sought. . . . When a modification is required by this section to be in writing and signed, such requirement cannot be modified except by clear and explicit language in a writing signed by the person against whom the modification is to be enforced.[3]

Section 535.17(2) places an extra burden on the parties entering into a contract—the essential elements of a contract must still exist. *See* Iowa Code § 535.17(7) ("This section entirely displaces principles of common law and equity that would make or recognize exceptions to or other limit or dilute the force and effect of its provisions concerning the enforcement in contract law of credit agreements or modifications of credit agreements. *However, this section does not displace any additional or other requirements of contract law, which shall continue to apply, with respect to the making of enforceable contracts . . . .*" (emphasis added)).

---

[2] Although Golden now maintains summary judgment was not appropriate because there is a genuine issue of material fact whether the parties reached a forbearance agreement, in its cross-motion for summary judgment, Golden asserted, "Pursuant to the undisputed facts, there is no genuine issue of material fact regarding whether the parties entered into a valid forbearance agreement preventing foreclosure . . . ."

[3] It is undisputed that First American provided Golden notification that only written modifications are enforceable.

In order to be bound by it, "contract parties must manifest a mutual assent to the terms of the contract." *Rick v. Sprague*, 706 N.W.2d 717, 724 (Iowa 2005). "This assent usually is given through the offer and acceptance." *Id.* The party who makes the offer is the master of the offer. *Blackford v. Prairie Meadows Racetrack & Casino, Inc.*, 778 N.W.2d 184, 191 (Iowa 2010). "A binding contract requires an acceptance of an offer." *Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 270 (Iowa 2001). "[T]he acceptance must conform strictly to the offer in all its conditions, without any deviation or condition whatever. Otherwise there is no mutual assent and therefore no contract." *Rick*, 706 N.W.2d at 724. Acceptance must be communicated or delivered. *Heartland*, 631 N.W.2d at 270–71. A private, uncommunicated assent does not make a contract. *Id.*

Golden claims there is at least a genuine issue of material fact whether First American agreed to only one $350,000 guarantee but later changed the terms. Golden's mere assertion is not enough to make summary judgment improper. *See Hlubek*, 701 N.W.2d at 95 ("[T]he nonmoving party may not rest upon the mere allegations of his pleading but must set forth specific facts showing the existence of a genuine issue for trial."); *see also* Iowa R. Civ. P. 1.981(5). Golden's only support of its assertion is an affidavit from Jeff Harder, the vice president of VisionBank, which provided services to Golden Enterprises and had to approve any guaranty made by Golden Enterprises. Harder's affidavit states on or about April 16, 2013, he had a phone conversation with Steve Phipps and another First American employee in which Harder approved one $350,000 guaranty and "it was understood by all parties in the call that VisionBank would support only one $350,000 guaranty." However, Phipps did

not have the independent authority to approve Golden's loan modifications. Harder's statement about what the parties understood is contrary to the April 17 modification request Phipps submitted to the director loan committee as it added Golden Enterprise as a limited guarantor for $350,000 to each loan. On May 7, 2013, the director loan committee approved the modification request as submitted. As the party making the offer, First American was the master of the offer. *See Blackford*, 778 N.W.2d at 191.

There is no genuine issue of material fact supporting Golden's claim that First American's offer was accepted. Phipps sent Steve Golden the proposed forbearance agreement for review on May 23, 2013. On June 5, 2013, Steve Golden sent his attorney an email in which he stated, in part, "We are close to an agreement but there are some items I do not want to agree to without discussion with you and one item I do not want to agree to period." The "one item" was the personal guaranty required by the proposed forbearance agreement and not the $350,000 limited guaranty by Golden Enterprises on each loan. Almost three weeks later—on June 25, 2013—Golden's attorney sent First American an email listing thirteen issues Golden had with the proposed agreement and requesting changes. First American sent the notice of default three days later.

On appeal, Golden maintains the record establishes the parties entered into an agreement because Phipps sent an email to Steve Golden that listed terms and "many of those terms were then agreed to between" the parties. As stated above, "[A]cceptance must conform strictly to the offer in all its conditions, without any deviation or condition whatever. Otherwise there is no mutual assent and therefore no contract." *Rick*, 706 N.W.2d at 724. As a matter of law, there

was no meeting of the minds to form a forbearance agreement, and the district court's ruling granting First American's motion for summary judgment on the foreclosure claim was proper.[4]  Because First American chose to negotiate with Golden but had no duty to and did not enter a new agreement, Golden's asserted affirmative defense that First American breached the covenant of good faith and fair dealing was properly dismissed.  *See Engstrom v. State*, 461 N.W.2d 309, 314 (Iowa 1990) (concluding, "Plaintiffs have cited no case decided by this court that provides a contract remedy for breaching an implied duty of good faith in entering a contract. . . .  We believe the Restatement position is sound in implying a duty of good faith only in the performance and enforcement of a contract.").  Additionally, the district court did not err in granting First American's motion to dismiss Golden's counterclaim that First American's action of filing a petition for foreclosure constituted a breach of contract.

---

[4] Golden makes several arguments regarding whether a forbearance agreement had to be in writing to be enforceable, whether the emails between the parties constitute writings, and whether partial performance defeats the writing requirement.  However, we find no agreement existed between the parties, under any of these circumstances.  At best, the parties had a nonbinding agreement to agree.  A writing that clearly contemplates the subsequent execution of a formal agreement raises the inference that the parties to the writing did not intend to be bound until the subsequent formal agreement is finalized.  *See, e.g.*, *Kopple v. Schick Farms, Ltd.,* 447 F. Supp. 2d 965, 976 (N.D. Iowa 2006); *Air Host Cedar Rapids, Inc. v. Cedar Rapids Airport Comm'n*, 464 N.W.2d 450, 453 (Iowa 1991); *Crowe–Thomas Consulting Group, Inc. v. Fresh Pak Candy Co.*, 494 N.W.2d 442, 444–45 (Iowa Ct. App.1992).  Furthermore, an agreement that is absent essential details and terms (or leaves such details and terms open for subsequent negotiation) is not usually recognized as a binding contract between the parties.  *See Kopple*, 447 F. Supp2d at 977–78; *see also Air Host*, 464 N.W.2d at 453.  Thus an email that contemplates the subsequent execution of a written formal agreement would not be binding.  *See* Iowa Code § 554D.106(2) ("This chapter only applies to transactions between parties each of which has agreed to conduct transactions by electronic means.")  Here, Phipps' email sent May 8, 2013, to Golden stated in the subject line "Loans-Approved," but the contents of the email provided in part, "Both loans were approved in committee late yesterday, I would estimate documents would be ready either Friday or early next week."  Clearly the bank's email expresses its intent that a subsequent written loan agreement would be necessary.

**B. Golden's Remaining Counterclaims.**

Golden maintained First American's action of freezing Golden's bank accounts constituted a breach of the bank account contracts, a breach of the duty of good faith and fair dealing, and conversion. The district court granted First American's motion to dismiss Golden's counterclaims. Golden maintains the district court made an error of law by failing to enforce the language of the bank account contracts and the district court's dismissal of the claims should be reversed.

Golden does not dispute that the bank account agreements at issue allow First American to set-off funds against a due and payable debt. Golden's argument appears to be two-fold: (1) the debt was not "due and payable" on June 28, 2013, when the administrative hold was placed, because First American's letter sent on the same date set forth a demand date of July 15, 2013, and (2) First American's action in placing an administrative hold on the funds without actually using them to set-off the debt was in breach of the contract.

The terms and conditions of the small business accounts agreements in question explicitly give First American the following rights:

> **SETOFF**—We may (without prior notice and when permitted by law) set off the funds in this account against any due and payable debt you owe us now or in the future, by any of you having the right of withdrawal, to the extent of such persons' or legal entity's right to withdraw. . . . We will not be liable for the dishonor of any check when the dishonor occurs because we set off a debt against this account. You agree to hold us harmless against any claim arising as a result of our exercise of our right to setoff.

Additionally, the provisions of the promissory notes provide:

**SECURITY**: To secure the payment and performance of obligations incurred under this Note, Borrower grants Lender a security interest in all of Borrower's right, title, and interest in all monies, instruments, savings, checking share and other accounts of Borrower . . . that are now or in the future in Lender's custody or control.

. . . .

**RIGHTS OF LENDER ON EVENT OF DEFAULT.** If there is an Event of Default under this Note, Lender will be entitled to exercise one or more of the following remedies without notice or demand (except as required by law):

. . . .

(d) to take possession of any collateral in any manner permitted by law;

(e) to employ a managing agent of the Property and let the same, in the name of the Lender or in the name of the Mortgagor, and receive the rents, incomes, issues and profits of the Property and apply the same, after the payment of all necessary charges and expenses, on account of the Obligations;

. . . .

(g) to set-off Borrower's obligations against any amounts due to Borrower including, but not limited to, monies, instrument, and deposit accounts maintained with Lender; and

(h) to exercise all other rights available to Lender any other written agreement or applicable law.

Pursuant to the signed promissory notes, First American had the right to take possession of the monies in the bank accounts and set-off against the amount owed without notice or demand. Here, Golden was in default in July 2012 and owed First American approximately $2.5 million. First American did not have to wait until June 28, 2013, to take action, and it was not required to send a demand letter or provide Golden with notice. Moreover, Golden has cited no authority to support its position that First American's decision to voluntarily provide a demand letter binds the bank in any way. Thus, the set-off could have been exercised any time after that date and there is no requirement that it coincide with the date fixed in the demand letter.

As the district court stated:

> While [Golden] may have been surprised by [First American's] action to freeze and offset the accounts, an offset action is necessarily one of surprise. It would be impractical for the bank to give notice and warning of its intent due to concern that the account holder would transfer or otherwise spend the funds.

Despite the demand letter with a date of July 15, 2013, Golden's debt remained due and payable on the date of the set-off, June 28, 2013, and First American was entitled to use the monies in Golden's accounts to set-off the debt.

We acknowledge it is undisputed that First American froze Golden's account on or about June 28, 2013, and subsequently retroactively set-off $43,235.77 of the monies by action taken on January 3, 2014.[5] But we are unable to conclude this action or inaction constituted a breach of any agreement, reflected a lack of fair dealing or good faith, or constituted conversion.[6]

Golden maintains that this delay in using the monies for set-off constituted a breach of contract. However, Golden has cited no case law or provision of the parties' agreements that requires First American to set-off the debts within a certain time period. Even if First American was required to take such action within a reasonable amount of time and did not, Golden cannot claim any damages because the monies were retroactively set-off. Moreover, as the district court recognized:

> While the bank did not immediately "set-off" the funds in the bank accounts by applying them to the loans, the administrative hold served essentially the same purpose—it prevented defendants

---

[5] These monies were from the small business accounts.

[6] Both Golden and the district court state the sum of $48,419 was the largest balance in the accounts after the administrative hold was placed on them. They cite to affidavits stating the same information. However, accountings from the bank show $43,235.77 was used to set-off against the outstanding principal and $6278.27 was used to make a "protective advance" to pay utilities and water, which totals $49,514.04. Because the total amount of money in the accounts was less than the amount owed to First American, we are not concerned by the difference.

> from accessing the funds and protected the funds to apply to the delinquency owed to the bank.
>
> [Golden's] argument amounts to a technicality without a meaningful distinction. In fact, the bank's action was arguably more favorable to defendants. If the bank had set off the funds at the time, the action was essentially final. In theory, the bank's action to freeze the accounts allowed flexibility if the parties had reached a voluntary resolution because the bank could have lifted the administrative hold.

First American used the balance of the monies in the frozen small business accounts to pay water and other utility bills for the two mortgaged properties. Golden maintains, in the alternative, that even if First American properly used the funds in the frozen accounts to set-off the debt owed, the use of funds for other purposes was improper and a breach of agreement. We disagree.

The promissory notes specifically provide First American with the right to "receive the rents, incomes, issues and profits of the Property and apply the same" to "the payment of all necessary charges and expenses." Golden does not contend the water and other utility bills were not "necessary charges and expenses." In fact, as part of its argument that First American breached the duty of good faith and fair dealing, Golden maintains that placing an administrative freeze on the bank accounts "jeopardized its ability to pay municipal water bills, electricity, state sales tax, insurance premiums, and other ordinary business expenses." Thus, neither First American's action of placing the administrative hold nor First American's use of the funds as a protective advance was in breach of the bank account contracts.

Because First American's actions were taken pursuant to contracts between the parties, Golden's remaining counterclaims regarding breach of duty

of good faith and fair dealing and conversion also fail.[7]  *See Alta Vista Props., LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 732 (Iowa 2014) ("The implied covenant of good faith and fair dealing . . . does not give rise to new substantive terms that do not otherwise exist in the contract." (internal quotation marks omitted)).  Thus, the district court properly dismissed each of Golden's counterclaims.

**IV. Conclusion.**

We conclude there was no meeting of the minds between the parties to form a second forbearance agreement as a matter of law, and the district court's ruling granting First American's motion for summary judgment on the foreclosure claim and dismissing the corresponding counterclaim was proper.  Additionally, because First American's placement of the administrative hold on Golden's bank accounts and use of the funds was done pursuant to the agreements between the parties, the district court properly dismissed Golden's remaining counterclaims.  Thus, we affirm the district court's ruling granting First American's motion for summary judgment in whole and dismissing each of Golden's counterclaims.

**AFFIRMED.**

---

[7] Because we find the district court properly dismissed Golden's counterclaims, we do not consider whether Golden would have been entitled to a jury trial on them.