# IN THE COURT OF APPEALS OF IOWA

No. 17-0583
Filed October 25, 2017

**DAVID WEGNER and KELLY WEGNER,**
    Plaintiffs-Appellants,

**vs.**

**BERT SCHAUER and DIANA SCHAUER,**
    Defendants-Appellees.

_____

Appeal from the Iowa District Court for Monona County, Edward A. Jacobson, Judge.

Plaintiffs appeal from an adverse judgment in a claim for breach of contract. **AFFIRMED.**

Peter J. Leo of Norelius Nelson Law Firm, Denison, for appellants.

Angie J. Schneiderman of Moore, Heffernan, Moeller, Johnson & Meis, L.L.P., Sioux City, for appellees.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

David and Kelly Wegner brought this suit for breach of a residential real estate contract against Bert and Diana Schauer after the Schauers failed to close on the parties' purported agreement. The Schauers asserted several affirmative defenses and made counterclaims for fraudulent misrepresentation, breach of contract, and intentional interference with a business relationship against the Wegners. In their breach-of-contract claim, the Schauers sought the return of their earnest money deposit in the amount of $5000. The case was tried to the district court. The district court found the parties had not entered into a final, enforceable contract. The district court also found and concluded the Schauers were entitled to the return of their earnest money. The Wegners timely filed this appeal.

I.

The Wegners owned and resided in two residential properties locally known as 955 and 965 East Lake Shore Drive in Lake View, Iowa. The property at 965 was the main home. The property at 955 was a smaller guest house, which David referred to as the "man cave." In 2014, the Wegners decided to sell the properties. The Wegners listed the property, but the listing generated little interest. The Wegners allowed the listing to expire in March 2015.

Approximately one month later, Bert approached David about purchasing both properties. The Wegners showed the Schauers the properties. After the viewing, David and Bert commenced negotiations on the sale of the homes. They communicated via phone calls, text messages, and personal conversations. The negotiations carried on for several months and involved extensive back and

forth, primarily on the structure of the transaction. David and Bert were both experienced in the business of buying, selling, and renting residential real estate.

At the same time the parties were negotiating the sale of the properties, they were both involved in other residential real estate transactions. The Wegners were purchasing a home in Carroll, contingent on the sale of the properties at issue. The Schauers were selling their home to their niece.

On July 8, 2015, David, Bert, and Diana met to sign a purchase agreement.[1] The Wegners were in need of a written purchase agreement to move forward with the purchase and finance of the Carroll home, and the parties agreed to meet to sign a purchase agreement for that purpose. The Wegners' attorney drafted the purchase agreement. The purchase agreement was not shown to the Schauers until they arrived for the signing. The agreement, signed by both parties, provides:

> The purchase price shall be $387,500, payable at Sac County, Iowa, as follows: $5000.00 down and credit at closing. Payment and closing on or before 8/7/2015. $162,000.00. Remainder paid on contract: $225,500.00 at 4% over 30 years; payments of $1076.57 on the 15th of each.

The agreement includes a handwritten notation, added by David, which reads "Balloon PMT to be 8/17/2017." At the time of signing, the Schauers provided a $5000 earnest money deposit.

The scheduled closing did not occur. The Schauers' niece decided not to purchase the Schauers' home. On July 24, 2015, Bert told David the Schauers

---

[1] There is some dispute about the actual date. The dated signature lines contain two different dates: 7/7/2015 and 7/5/2015. The district court determined based on the witness testimony and exhibits the date was 7/8/2015.

would not be going forward with the purchase of the properties. In March 2016, the Wegners sold the 965 and 955 properties to another buyer for $375,000.

After failed settlement negotiations, the Wegners filed suit for breach of the purchase agreement. After a bench trial, the district court found, "[I]t is clear to the Court that there was never a meeting of the minds sufficient to support a theory of mutual assent to the terms of the contract." The district court noted, "[I]n no text message, from either party, do the two seem to stick to anything they agreed upon. There is much separation in time in quite a few of the responses from both parties and very little consistency." "[P]rior to the meeting on July 8, David and Bert had agreed that any 'tweaks' necessary could be made on the contract itself. To the Court, this message is especially indicative of the lack of finality in the signed agreement." The court also found the Wegners' failure to provide a disclosure statement made "the agreement unenforceable and void irrespective of any outside factors." Finally, the district court concluded the Schauers' fraudulent misrepresentation counterclaims were without merit but concluded the Schauers were entitled to the return of their earnest money.

II.

Our review is for the correction of legal error. *See Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 110 (Iowa 2013). The district court's findings of fact "shall have the effect of a special verdict." Iowa R. App. P. 6.907. The district court's findings of fact are binding if supported by substantial evidence. *See Land O'Lakes, Inc. v. Hanig*, 610 N.W.2d 518, 522 (Iowa 2000); *Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 689 (Iowa 1999). Evidence is substantial "when a reasonable mind would accept it as adequate to

reach a conclusion." *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995). "In determining whether substantial evidence exists, we view the evidence in the light most favorable to the district court's judgment." *Chrysler Fin. Co. v. Bergstrom*, 703 N.W.2d 415, 418 (Iowa 2005). "[W]e construe the evidence broadly to uphold, rather than defeat, the trial court's judgment." *Grall v. Meyer*, 173 N.W.2d 61, 63 (Iowa 1969).

III.

The Wegners contend the district court erred in finding the parties had not mutually assented to the terms of the contract.

> For a contract to be valid, the parties must express mutual assent to the terms of the contract." *Schaer v. Webster County*, 644 N.W.2d 327, 338 (Iowa 2002). Mutual assent is present when it is clear from the objective evidence that there has been a meeting of the minds. *Id.* To meet this standard, the contract terms must be sufficiently definite for the court to determine the duty of each party and the conditions of performance. *Seastrom v. Farm Bureau Life Ins. Co.*, 601 N.W.2d 339, 346 (Iowa 1999).

*Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010). Mutual assent is based on objective evidence and not hidden subjective intent. *Schaer*, 644 N.W.2d at 338. Assent is typically given through an offer and acceptance. *Rick v. Sprague*, 706 N.W.2d 717, 724 (Iowa 2005). "[A]cceptance must conform strictly to the offer in all its conditions, without any deviation or condition whatever. Otherwise there is no mutual assent and therefore no contract." *First Am. Bank v. Urbandale Laser Wash, LLC*, 874 N.W.2d 650, 656 (Iowa Ct. App. 2015). A written real estate contract can constitute all the objective evidence needed to determine mutual assent. *See Ziskovsky v. Ziskovsky*, No. 13-0360, 2014 WL 69620, at *3 (Iowa Ct. App. Jan. 9, 2014)

(noting when the written contract features the signatures of all parties, the terms are sufficiency definite, and the parties' duties and conditions of performance are ascertainable, a real estate contract alone can be the objective evidence of mutual assent).

Although the parties signed a written purchase agreement, there was a dispute as to whether the agreement was final or whether the Schauers merely agreed to sign a document to allow the Wegners to move forward with the purchase of the home in Carroll on the mutual understanding the agreement would be finalized later.

The Schauers contend the signed agreement was not a final agreement. They contend they clearly told David Wegner they would not accept a term calling for a balloon payment. They also testified they required a contingency for the sale of their home. They testified they did not agree to the handwritten note on the contract regarding the balloon payment. They testified David agreed and told them he would have a new contract drawn up by his attorney. Bert testified that he and his wife signed the contract and provided the earnest money because they trusted David Wegner and he told them he needed the written agreement signed that night to secure financing for the purchase of the new home in Carroll the next morning. A text from July 3, 2015 seems to corroborate this:

> Hi Bert. If this is going to work for you we need to answer to them if we could a 5000 earnest we could hard write something and sign it until contracts are done I have something to show bank mine are sold so I can get letter of financing[.]

David agreed he told Bert he needed something in writing for the bank about the "situation" they were entering into. Bert testified after the signing, he stopped by the Wegner house to follow up on the new contract and David Wegner told him "[our attorney] is working on it. She'll get it. As soon as I get it, I'll get it to you." He also testified he followed up with David on this new contract between three to five times but David never provided a new document.

The Wegners argue the Shauers wanted the balloon payment term in the contract, as shown by a text message from June 23, 2015. The text message from that date reads:

> Dave, here is my situation. I have enough to pay the main house and put down $25,000 on other house. This is after we close on our house and another house we have sold. That should all be done by July 31 or sooner. The next thing is if we can set up the balance of $125,000 to be pay [sic] at $650.00 a month for 23 months with balloon or the balance on the 24th month. The only reason I ask for 24 months is because I need to sell a couple things. I'm hoping only 6 to 12 months but as you know things sometimes don't go as planned. Also working on some other things that may come sooner. Please let me know how this works for you. Thank you for your patience. Bert.

David replied on June 25, 2015, "[W]orking on a few things I think it will work we will talk." David contends a telephone call solidified the agreement on the balloon payment. Continued negotiations on the transaction structure occurred. Importantly, there were frequent discussions involving different financing structures, including a twenty-year loan, between June 25, 2015, and July 8, 2015, via text message, telephone, and in person communication. One day before the signing of the agreement, Bert texted David the following:

> Dave can we do the plan we had of 162000.00 down and contract the rest but I need payments as low as you can to the 650.00 a

month for the two years. We will bring over $5000.00 deposit this evening you get contract done today or tomorrow. Let me know.

David texted back that the terms were fine and he would get a contract. David testified that he only spoke to Bert about different terms after the signing of the agreement one time. He stated Bert wanted to put more down at closing to get immediate title to only the 965 property. The Wegners chose not to accept the Schauers' offer.

Although we may have found differently were we deciding the issue anew, we are not deciding the issue anew. Evidence is not insubstantial "merely because [the court] may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Raper v. State*, 688 N.W.2d 29, 36 (Iowa 2004); *see Portzen Constr., Inc. v. Cal-Co Insulation, Inc.*, No. 13-0758, 2014 WL 2347821, at *4 (Iowa Ct. App. May 29, 2014) ("Our role as the reviewing court is not, however, to dissect the record anew to reach our own factual findings."). While there was a signed writing, there is a dispute regarding whether the writing evidences the parties' final agreement. The evidence is in conflict regarding whether the signed agreement was intended as a final agreement or whether it was a document the parties signed merely to facilitate the Wegners' purchase of the home in Carroll. In resolving the conflicting evidence, the district court made implicit credibility determinations. "We are obliged to view the evidence in the light most favorable to sustaining the court's judgment." *City of McGregor v. Janett*, 546 N.W.2d 616, 617 (Iowa 1996). When the record is reviewed in the

light most favorable to sustaining the district court's judgment, the findings are supported by substantial evidence.

The Wegners contend the district court erred in relying on extrinsic evidence to interpret the meaning of the integrated agreement. The Schauers contend the issue was not properly preserved for appellate review.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "Although the parol evidence rule is a substantive rule of law, standard error preservation rules regarding the admission of evidence apply to parol evidence issues." *Peck v. Four Aces Farms, Inc.*, No. 14-1482, 2015 WL 4642386, at *5 (Iowa Ct. App. Aug. 5, 2015) (citing *Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000)). The Wegners never made any objection at trial to the admission of arguably extrinsic evidence. The district court never mentioned parol evidence or an integrated agreement in its written findings. The district court considering the terms of the negotiations was essential to the mutual-assent analysis and is not an implied integration finding as the Wegners claim. Further, as in *Peck*, "without the benefit of objections at trial . . . this court cannot be sure which pieces of evidence were contested" nor which evidence the Wegners believe the district court erroneously relied upon. *See id.* Error was not properly preserved.

Even bypassing the error-preservation problem, the argument is unavailing. The parol evidence rule generally provides "[a]lthough extrinsic evidence may be admissible to explain the real meaning of the parties by the

language used in a contract, the parol evidence rule forbids the use of extrinsic evidence to vary, add to, or subtract from a written agreement." *Montgomery Props. Corp. v. Econ. Forms Corp.*, 305 N.W.2d 470, 475–76 (Iowa 1981). An integrated agreement is one in which the parties adopt writing(s) as the final and complete expression of an agreement. *Id.* at 476. "[P]arol evidence is admissible to show a writing is not an integrated agreement." *Id.*

The Wegners mischaracterize the analysis of the district court. The district court was not interpreting the terms of the contract, but instead determining whether a contract even existed. The extrinsic evidence went to whether a contract was formed, whether mutual assent existed, and whether the written sale agreement was an integrated document. Under such circumstances, especially when the purported contract lacks an integration clause, the district court does not err in considering extrinsic evidence. *See id.*; *In re Eickman Estate*, 291 N.W.2d 308, 312 (Iowa 1980); *Fashion Fabrics of Iowa, Inc. v. Retail Inv'rs Corp.*, 266 N.W.2d 22, 25 (Iowa 1978).

Because we find that the district court properly considered extrinsic evidence and substantial evidence supports the district court's finding that no contract was formed, we need not decide the condition-precedent or fraudulent-misrepresentation issues.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**