# IN THE COURT OF APPEALS OF IOWA

No. 19-2057
Filed September 23, 2020

**FIRST AMERICAN BANK and
GREENSTATE CREDIT UNION,**
    Plaintiffs-Appellees,

**vs.**

**CHERYL LYNN JOHNSON, et al.,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Webster County, Gina C. Badding, Judge.

Cheryl Johnson appeals the dismissal of her abuse-of-process claim and the award of a summary judgment to First American Bank on the mortgage note. She also disputes the attorney fee award. **AFFIRMED.**

Alexander V. Kornya of Iowa Legal Aid, Des Moines, for appellant.

William B. Serangeli and William M. Reasoner of Dickinson, Mackaman, Tyler, and Hagen, P.C., Des Moines, for appellee.

Considered by Tabor, P.J., and May and Greer, JJ.

**GREER, Judge.**

After she defaulted on agreements to pay a mortgage debt, First American Bank[1] moved for summary judgment to collect the monies from Cheryl Johnson. The district court ruled in favor of the bank and entered a foreclosure decree and an attorney fee judgment against Johnson. Johnson raised claims of abuse of legal process for the bank's efforts to seek a conservatorship over her. She appeals the dismissal of her counterclaim. She also argues she was not in default of her agreement with the bank and it was error for the district court to grant the bank's summary judgment. Finally, Johnson disputes the attorney fee award as unreasonable.

First American argues that only the attorney fee question is properly before us for consideration because the appeal on the issues resolved by summary judgment is untimely. We proceed to our analysis of this dispute.

## I. Background Facts and Proceedings.

In October 1990, Johnson purchased a home in Fort Dodge, Iowa, for $36,000. At the time of these proceedings, Johnson lived in the home with a disabled adult daughter. To finance the purchase, Johnson obtained a loan, secured by a mortgage, from First American. But Johnson struggled to pay the monthly payments on the obligation. Finally, in January 2012, First American filed

---

[1] During the appeal, First American applied to substitute parties because GreenState Credit Union bought certain assets and liabilities of First American and now is the party in interest. For ease of understanding, given the filings in the underlying case, we use the terms "First American" and "the bank" to reference the banks' interest in this appeal.

a foreclosure action against Johnson because of her failure to make the monthly mortgage payments.  The foreclosure decree issued on April 9, 2012.

In April 2013, Johnson negotiated a settlement agreement with the bank to remain in the home.  With that agreement finalized on April 30, 2013, Johnson agreed to pay $19,803.91 in installments of $310 per month from June 1, 2013, until May 1, 2016, with a final balloon payment of the unpaid principal balance, which would become due on June 1, 2016.  Johnson dutifully paid each of the required monthly payments, but when the balloon payment became due in June 2016, funds were not available to make that payment.  Yet, in anticipation of the coming balloon payment, the bank discussed with Johnson how she might fund the payment.  Under a new forbearance agreement negotiated with Steven Phipps, the vice president for credit management at First American, Johnson agreed to pay $382 on June 1.  Johnson paid the sum by money order, and it was cashed June 3.

After mailing the draft agreement to Johnson for her signature on June 13, a dispute arose.  Under that draft agreement proposal, Johnson would pay $425 per month starting on July 1, 2016, plus $760 towards the bank's attorney fees and $375 to be applied to interest, escrow, and outstanding fees.  In exchange for these payments, the bank agreed to extend the maturity date of the note to October 1, 2016.  Johnson maintains the escrow payment of $402.66 had not been discussed and was not appropriately in the draft agreement.  The parties sparred over the terms and were unable to come to a middle ground.  Thus, the agreement was never signed, and although Johnson sent the bank $425 on July 1, 2016, and

another payment of $425 on August 1, 2016, no other payments were forthcoming. The bank accepted the July payment.

Because the balloon payment was not made, on July 11, 2016, the bank mailed Johnson a notice to cure requiring her to pay all outstanding amounts within thirty days. Likewise, the notice advised Johnson that if she did not cure the default the bank would proceed with foreclosure. Johnson failed to cure the default within the required thirty days.

The bank sent yet another demand for payment of the accelerated balance on September 15, 2016, alerting Johnson of the intent to foreclose and the right to mediation. Again, Johnson failed to pay within the demand. Next on January 2, 2017, another notice to cure was sent to Johnson demanding payment of $18,978.67 within ten days and informing Johnson if she failed to comply the bank would file a warranty deed in lieu of foreclosure.

Despite the demands and notices, the bank did not take further action against Johnson. So without making any further payments, Johnson and her daughter remained in the home. It was not until April 11, 2018, when the bank again wrote to Johnson urging her to retain legal counsel or grant a family member power of attorney to handle the default issue. A second letter repeated the same request in May 2018. Finally, Johnson replied several weeks later disputing the loan terms.

To move the situation along, the bank believed that if they petitioned for limited conservatorship over Johnson they would be able to resolve the delinquent payment issue. The bank contacted an attorney to work towards establishing a conservatorship, limited in scope towards making sure the ward pays Johnson's

obligations to the bank to allow her to remain in the home. With that plan in place, the bank made one more attempt to negotiate a settlement with Johnson. That letter, dated September 24, 2018, advised Johnson of the $31,872.89 payoff, which included attorney fees, interest, and court costs. Johnson failed to pay that payoff amount. So the bank proceeded by filing a conservatorship petition to establish an involuntary limited conservatorship over Johnson. Even though he had never met Johnson, Phipps signed the petition, which alleged she was a person whose decision-making was so impaired that she was unable to make, communicate, or carry out important decisions concerning her financial affairs. Phipps had no medical training to make that determination but believed Johnson had placed herself in a serious situation where she could lose her home and her adult daughter's residence.

With the conservatorship pending, a confused Johnson believed that the bank's plan was to take away her freedom and her ability to care for her disabled adult daughter. She was scared, upset, and had trouble sleeping but did not consult with an attorney to represent her in the consumer conservatorship proceeding. On November 26, 2018, the district court denied the bank's request to appoint a temporary conservator given the lack of medical evidence or any information justifying the conservatorship. Undeterred, the bank moved to compel Johnson to submit to a mental examination. Johnson then contacted an attorney who filed an answer to the petition and counterclaims for abuse of process in violation of the federal Truth in Lending Act. The bank then dismissed the conservatorship petition and commenced the foreclosure proceeding on January 28, 2019. Johnson answered the foreclosure petition in February 2019 along with

a demand for delay of sale. She also counterclaimed, advancing the same counterclaims included in the conservatorship proceeding.

On July 1, 2019, the bank moved for summary judgment on its foreclosure action and on Johnson's two counterclaims. Johnson resisted the motion and filed her own partial summary judgment motion on the first two elements of her abuse-of-process claim. Johnson dismissed all counterclaims except for the abuse-of-process claim. The summary judgment motion was heard on July 19 with attorneys for each party present. The district court granted summary judgment to First American on the foreclosure petition and dismissed the counterclaim for abuse of process. After further filings, the district court awarded attorney fees and costs based on the contract to First American. Johnson appeals all rulings, except for the dismissal of the Truth in Lending Act claim.

## II. Standard of Review.

When reviewing an order granting summary judgment in a foreclosure proceeding, the standard of review is for correction of errors of law. *Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 806 (Iowa 2011). Our standard of review involving actions for abuse of process is for correction of errors at law. *Royce v. Hoening*, 423 N.W.2d 198, 200 (Iowa 1988).

Because Johnson's claims involve an appeal from the granting of summary judgment, on review, our task is to determine whether any disputed issues of material fact exist that would render summary judgment inappropriate and, if not, whether the trial court correctly applied the law to the undisputed facts. *See Banwart v. 50th Street Sports, L.L.C.*, 910 N.W.2d 540, 544-45 (Iowa 2018). The burden is upon the defendant bank to show the nonexistence of material facts and

to prove they are entitled to judgment as a matter of law. *See Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984). Every legitimate inference that can be reasonably deduced from the evidence must be afforded the party resisting the summary judgment motion, and a question of fact is generated if reasonable minds could differ on how the issue should be resolved. *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 73 (Iowa 2011). Entry of summary judgment is proper if the conflict in the record concerns only the legal consequences flowing from undisputed facts. *Jacobs v. Stover*, 243 N.W.2d 642, 643 (Iowa 1976).

Finally, we review a district court's award of attorney fees for an abuse of discretion. *Boyle v. Alum–Line, Inc.*, 773 N.W.2d 829, 832 (Iowa 2009).

## III. Analysis.

We begin by addressing the bank's motion to dismiss the appeal as untimely and then proceed to the issues raised by Johnson.

### *A. Bank's Motion to Dismiss.*

First American challenges Johnson's appeal related to the matters resolved by summary judgment as untimely. We must first resolve the threshold question related to First American's motion to dismiss the appeal because if the bank is correct, we are without jurisdiction to consider that portion of Johnson's appeal. We consider challenges to our jurisdiction before other issues in a case. *See Tigges v. City of Ames*, 356 N.W.2d 503, 511 (Iowa 1984). The general rule requires an appeal to be filed within thirty days after a final judgment, order, or decree, but there are certain enumerated exceptions. *See* Iowa R. App. P. 6.101(1)(b) (requiring a notice of appeal to "be filed within 30 days after the filing of the final order or judgment" unless "a motion is timely filed under Iowa R. Civ.

P. 1.904(2) or Iowa R. Civ. P. 1.1007").  Those post-trial motions deemed to extend the time for filing a notice of appeal are: motion for a new trial, motion for judgment notwithstanding the verdict, and motion to enlarge the district court's findings of fact and conclusions of law pursuant to Iowa Rule of Civil Procedure 1.904(2).  *See Fed. Am. Int'l, Inc. v. Om Namah Shiva, Inc.*, 657 N.W.2d 481, 483 (Iowa 2003); *see also* Iowa Rs. Civ P. 1.1007 (requiring "[m]otions under rules 1.1003 [judgment notwithstanding verdict] and 1.004 [new trial]" to "be filed within fifteen days after filing of the verdict, report, or decision"), 1.904(2) ("On motion joined with or filed within the time allowed for a motion for new trial, the findings and conclusions may be reconsidered, enlarged, or amended . . . .").

So our first task is to answer whether we have jurisdiction to address the appeal on the merits.[2]  Both parties agree that the final order from which to appeal is the decree of foreclosure—dated September 24, 2019.  That decree foreclosed the property, entered judgment, and awarded attorney fees.  But Johnson asserts her motions extended the time for filing the appeal.

Johnson's motion to enlarge the decree of foreclosure was timely filed on October 4.  The motion contested the attorney fee award as unreasonable and asked the court to reconsider the abuse-of-process ruling and the entry of default on the mortgage.  On the same date, without a hearing, the district court denied the motion to enlarge as to any issues raised and decided by the summary judgment ruling but set a hearing on Johnson's challenge to the attorney fee

---

[2] The bank refers to the dismissal of the abuse-of-process claim and the entitlement to foreclosure as the "merits" of the case, so we will use that descriptor as well.

award. That attorney fee hearing was set for October 21, 2019. To clarify and preserve error on arguments made in the first motion to enlarge but not referenced by the district court in the ruling, on October 18, Johnson filed another motion to enlarge—termed a "clarification." On October 21, the court again confirmed its summary judgment ruling and addressed the arguments that it first believed had not been raised earlier. Then after the October 21 hearing on the attorney fee issue, the district court entered an order on December 1 affirming the earlier attorney fee set out in the foreclosure decree.

First American concedes that Johnson filed a timely appeal on the issue of attorney fees. The district court addressed the fee issue raised in the October 4 motion to enlarge on December 1, and Johnson appealed from that ruling on December 4. As to the appeal on the merits, the bank argues that because the ruling on the merits section of the motion to enlarge the decree occurred on October 4—if you considered the first motion to enlarge—or occurred on October 21—if you considered the "clarification" or second motion to enlarge[3]—Johnson had to file her appeal thirty days after those rulings and December 4 was too late. Johnson contends she could wait until after the December 1 ruling because all issues from the October 4 motion to enlarge were not yet resolved. Arguing that the fee issue is collateral to the summary judgment merits, First American points to Iowa Rule of Appellate Procedure 6.103(2) as dispositive:

> *Attorney fee order entered after final judgment.* A final order or judgment on an application for attorney fees entered *after the final order or judgment in the underlying action* is separately appealable.

---

[3] The bank asserts the second motion to enlarge did not extend the appeal time because successive motion to enlarge do not keep tolling the appeal deadline, but we do not need to address those arguments today.

> The district court retains jurisdiction to consider an application for attorney fees notwithstanding the appeal of a final order or judgment in the action. If the final order or judgment in the underlying case is also appealed, the party appealing the attorney fee order or judgment shall file a motion to consolidate the two appeals.

Iowa R. Civ. P. 6.103(2) (emphasis added). First American references a case where the appeal was untimely when the attorney fee issue was resolved after a final ruling on the lawsuit and counsel waited to appeal the final ruling within the thirty days after that attorney fee final order. *See Bd. of Water Works Trs. v. City of Des Moines*, 469 N.W.2d 700, 703 (Iowa 1991). But here, the final order on attorney fees *included* the final order on the merits—the attorney fee award did not follow the order on the underlying action. *See Gannon v. Willow Creek Century Farms, L.L.C.*, No. 14-0293, 2015 WL 1849401, at *4 (Iowa Ct. App. Apr. 22, 2015) (finding where final judgment and order on attorney fees were filed at the same time, one notice of appeal is appropriate). Johnson's motion to enlarge questions the fees and the ruling on the merits. And while the district court first addressed the merits in a ruling without a hearing, it reserved ruling on the fee question until after a hearing was held. Thus, the December 1 date of the final ruling that resolved all issues raised by the motion to enlarge was the proper date from which to start the thirty-day appeal period. This was the final order resolving the lawsuit. *Franzen v. Deere & Co.*, 409 N.W.2d 672, 674 (Iowa 1987) ("A final judgment, one that conclusively determines the rights of the parties and finally decides the controversy, creates a right of appeal and also removes from the district court the power or authority to return the parties to their original positions.").

Thus, we find Johnson timely appealed all issues raised by her in this case and we have jurisdiction to decide her claims.

> B. *Did the district court appropriately grant summary judgment against Johnson in the foreclosure action?*

While Johnson claims there is a genuine issue of material fact that the bank modified the April 30 modification agreement by a "meeting of the minds" as to the 2016 forbearance agreement, we see no factual dispute and no meeting of the minds. The district court likewise found no genuine fact issue prohibiting the award of summary judgment to the bank. The district court provided a detailed and thoughtful analysis that addressed each and every argument raised by Johnson. In the end, Johnson breached the April 30, 2013 modification agreement by failing to pay the balloon payment that came due. The attempt to resolve matters under the 2016 forbearance agreement failed when Johnson disputed the written terms and never signed the agreement.

To be bound by a contract, the parties to that agreement "must manifest a mutual assent to the terms of the contract." *Rick v. Sprague*, 706 N.W.2d 717, 724 (Iowa 2005). "[T]his assent usually is given through the offer and acceptance." *Id.* (alteration in original) (citation omitted). "A binding contract requires an acceptance of an offer." *Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 270 (Iowa 2001). The district court found no meeting of the minds to form a forbearance agreement occurred and that any alleged tentative agreement failed to meet the requirements of Iowa Code section 535.17(2) (2019).[4] *See First Am.*

---

[4] This section provides:

> Unless otherwise expressly agreed in writing, a modification of a credit agreement which occurs after the person asserting the modification has been notified in writing that oral or implied modifications to the credit agreement are unenforceable and should not be relied upon, is not enforceable in contract law by way of action

*Bank v. Urbandale Laser Wash, LLC*, 874 N.W.2d 650, 655 (Iowa Ct. App. 2015) (discussing contract principles and the statutory requirements to modify a credit agreement). The district court correctly granted summary judgment against Johnson in the foreclosure action.

> *C. Did the conduct of First American constitute abuse of process such that a summary dismissal of Johnson's counterclaim was inappropriate?*

In the fighting issue of the case, Johnson portrays her abuse-of-process claim as one of first impression, not only in Iowa, but in the nation. She sounds the alarm to expose the actions of First American to use the conservatorship process to induce vulnerable citizens to pay their bank debts. She finds several of the bank's efforts distasteful. Even so, we do not find the efforts to be actionable. The district court dismissed the abuse-of-process counterclaim under the same analysis.

Still, Johnson emphasizes the bank used the conservatorship process to compel her to pay its debt. That purpose was confirmed by First American in its email correspondence to the proposed conservator when the bank attorney wrote: "Your role as a conservator would be limited in scope to making sure the ward pays her obligations to the bank."

---

or defense by any party unless a writing exists containing the material terms of the modification and is signed by the party against whom enforcement is sought. . . . When a modification is required by this section to be in writing and signed, such requirement cannot be modified except by clear and explicit language in a writing signed by the person against whom the modification is to be enforced.

To prove a claim of abuse of process, a plaintiff must show (1) use of the legal process, (2) in an improper or unauthorized manner, and (3) that damages were sustained as a result of the abuse. *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001). With respect to the second element of the cause of action for abuse of process, "[t]he plaintiff must prove that the defendant used the legal process *primarily* for an impermissible or illegal motive." *Stew-Mc Dev., Inc. v. Fischer*, 770 N.W.2d 839, 849 (Iowa 2009) (alteration in original) (quoting *Gibson*, 621 N.W.2d at 398).

It is the second element where Johnson's proof failed. Finding no impermissible or illegal motive, the district court determined Johnson failed to clear the second hurdle of this claim. The court found:

> Finally, while First American may have been using the conservatorship process as a means to collect its debt from Johnson, there is no evidence the bank was using the proceeding to extort money it was not entitled to from Johnson or to collect more money than was owed to it. *See Schmidt v. Wilkinson,* 340 N.W.2d 282, 285 (Iowa 1983) (noting the "essence of the tort is ordinarily any attempt to secure from another some collateral advantage not properly includable in the process itself" (citation omitted)). Indeed, if the bank had been successful in establishing the conservatorship, the most it could have hoped for or received was payment of the debt rightfully owed to it. There was thus no "collateral advantage" to the bank that was "not properly includable in the process itself." *Id.*

We find the district court applied the correct law to these undisputed facts and appropriately dismissed Johnson's abuse-of-process counterclaim.

## IV. Attorney Fee Award.

In our review of the attorney fee award, we afford the district court considerable discretion. *Boyle v. Alum–Line, Inc.*, 773 N.W.2d 829, 832 (Iowa 2009). Johnson asserts the fee award includes time for filing the "baseless"

conservatorship. The district court knew the dynamics of the case and could ascertain whether First American's claim for fees included matters outside of the contract terms. "Reversal is warranted only when the court rests its discretionary ruling on grounds that are clearly unreasonable or untenable." *Gabelmann v. NFO, Inc.*, 606 N.W.2d 339, 342 (Iowa 2000). We see no reason to disturb the fee order.

**V.      Conclusion.**

We deny First American's motion to dismiss the appeal as untimely and affirm the district court on all other issues raised on this appeal.

**AFFIRMED.**